807 F.2d 1229
 John HEATH and Joyce Thomas, Plaintiffs-Appellees Cross-Appellant,
and
Weegail Washington, Plaintiff-Appellee
v.
Chief A.J. BROWN, Defendant-Appellant
and
Lee R. Caughron, J.E. Tywater, and the City of Fort Worth,
Defendants- Appellants Cross-Appellees.
 No. 86-1253.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 20, 1987.
 
 Richard E. Henderson, Asst. City Atty., Wade Adkins, City Atty., Janet Peason, Karen Anderson, Asst. City Attys., Fort Worth, Tex., for defendants-appellants.
 Don Gladden, Fort Worth, Tex., for plaintiffs-appellees.
 Appeals from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, GOLDBERG, and GEE, Circuit Judges.
 PER CURIAM:
 
 
 1
 The City of Fort Worth and several of its officials and police officers appeal from a $15,000 award of attorneys' fees under 42 U.S.C. Sec. 1988. We vacate and remand the case because the district court did not determine whether the plaintiffs prevailed on their federal claims.
 
 I.
 
 2
 Plaintiffs John Heath and Joyce Thomas were arrested on separate occasions in 1976 and early 1977 by City of Fort Worth police officers for violating the Texas "Failure to Identify" law. Tex.Penal Code Ann. Sec. 38.02 (Vernon 1974). The "Failure to Identify" law requires a person lawfully stopped by a peace officer to report his name and residence on request. Although the plaintiffs identified themselves, they did not produce identification. The Fort Worth Police Department had erroneously interpreted the Texas statute to require persons stopped to present identification. As a result, plaintiffs were arrested and charged with violating Sec. 38.02. Both plaintiffs were acquitted in the Fort Worth Municipal Court.
 
 
 3
 The plaintiffs then filed this action in the district court under 42 U.S.C. Sec. 1983 alleging deprivations of their constitutional rights, requesting damages and declaratory and injunctive relief, appending state tort claims of false arrest and false imprisonment, and asking the district court to expunge their arrest records under Texas law. They also requested attorneys' fees under Sec. 1988.
 
 
 4
 The case proceeded in several phases. First, the damage claims under Sec. 1983 and state false arrest were tried to a jury. Before the case went to trial in January 1980, however, counsel for the plaintiffs withdrew the Sec. 1983 claim for damages, apparently on the belief that the police officers and municipal officials would successfully assert a qualified immunity defense, see Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and that the city could not be held liable for damages if its employees acted in good faith.[1] Thus, the jury heard only the pendent state-law strict liability false arrest and false imprisonment claims. It returned a verdict and $240 to plaintiffs.
 
 
 5
 The district court then held a hearing on the declaratory and injunctive relief claims under the federal constitution. The court ruled that Sec. 38.02 was constitutional on its face, but, relying on Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), ruled that it was applied to the plaintiffs under a city policy allowing arrests in violation of the fourth amendment.[2] The district court concluded, however, that the claim for injunctive and declaratory relief was moot because the Fort Worth Police Department had changed its policy to comply with the mandate of Brown. The court decided to exercise pendent jurisdiction to expunge plaintiffs' arrest records under the appropriate state statutes. See Tex.Crim.Proc.Code Ann. art. 55.01 et seq. (Vernon 1979).
 
 
 6
 Both sides appealed. A panel of our Court held that the district court did not abuse its discretion in adjudicating the pendent claims, even though no relief was granted under federal law. But the panel affirmed the denial of equitable relief under the constitution, agreeing with the district court that the plaintiffs' claims for such relief were moot. Heath v. Brown, No. 81-1256, 698 F.2d 837 (1982) (unpublished opinion).
 
 
 7
 In March 1985, the district court held a hearing on attorneys' fees; in February 1986, the court issued its opinion. It held that the plaintiffs were "prevailing parties" under the definition approved in Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), and the law of this circuit, Hennigan v. Ouachita Parish School Bd., 749 F.2d 1148 (5th Cir.1985). Memorandum Opinion ("Op.") at 6. Noting the emphasis in Hensley on the degree of success, the court went on to determine the extent to which the plaintiffs prevailed. The court chose a mathematical approach. First, it divided the plaintiffs' basic claims into thirds ("Claim I"--4th and 14th amendment rights; "Claim II"--claim for a declaration that Sec. 38.02 is unconstitutional; "Claim III"--state tort law claims). Op. at 7. Next, the court determined that the plaintiffs had completely won Claim III and lost Claim II. The court then divided Claim I into thirds again--(1) "vindication" of plaintiffs' rights; (2) request for damages; (3) request for injunctive relief--and ruled that plaintiffs had "undisputedly" prevailed on subclaim (1). Id. Finally, the court ruled that the plaintiffs had half prevailed on subclaims (2) and (3): the claim for damages was half successful because plaintiffs' recognized that the law did not then permit damages, op. at 7-8, and the claim for injunctive relief was half successful because the city may have changed its policy in response to the lawsuit. Op. at 8. The court held that the plaintiffs had been 56% successful. Id.[3]
 
 
 8
 After this strange departure, the district court continued on a more conventional journey through attorneys' fees land. It found a "lodestar" by computing a reasonable number of hours for plaintiffs' attorneys for the entire case, op. at 9, refusing to eliminate the hours spent on unsuccessful claims "because all but the claims Plaintiffs themselves excluded, emanate from a common nucleus of operative fact ...," id., finding a reasonable hourly rate for the attorneys and paralegal (including a slight discount for the attorneys' procrastination in pursuing their fees), op at 12, and multiplying reasonable hours times reasonable rate, op. at 13. The result was $33,009.99. The court multiplied this figure times the 56% "percentage of success" and produced a figure of $18,485.59. Finally, the court discounted the total fees to $15,000 because of the attorneys' failure to keep contemporaneous time records. Op. at 10, 13. The court refused the plaintiffs' request to multiply the award because of the contingent nature of the case.
 
 
 9
 On appeal both sides complain of the mathematical calculations of the district court. The appellants-defendants argue that the district court erroneously used the numbers to determine whether the plaintiffs prevailed. They claim that both the Supreme Court and the Fifth Circuit have rejected a mathematical breakdown of issues as a means of determining prevailing party status. Furthermore, they contend that the plaintiffs did not prevail within the statutory meaning and are not entitled to any attorneys' fees. They do not dispute the amount itself. The cross-appellants-plaintiffs argue that the district court erred in measuring their degree of success by dividing their claims into portions; in effect, they argue that because they "prevailed" they should receive a full award regardless of the resolution of specific issues. They also claim that the district court abused its discretion by setting their hourly rate below the standard rate in the community, and by not granting a "multiplier" bonus because of the contingent nature of the case.
 
 II
 
 10
 The defendants argue that the district court used an impermissible mathematical technique for determining whether the plaintiffs "prevailed."[4] We disagree. It seems clear to us that the district court first determined that the plaintiffs' prevailed, op. at 5-6,[5] then commenced the mathematical maneuvers about which both sides complain. Op. at 7-8.[6] The computations were an attempt to satisfy the command of Hensley that even after the "prevailing" party has been established, the degree of success must be taken into account in setting a "reasonable" attorney's fee. See op. at 6; Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. Therefore, we can postpone consideration of the propriety of the district court's controversial method. We must first decide if the district court was correct when it ruled that the plaintiffs "prevailed."
 
 
 11
 A party who prevails on both state and appropriate federal claims is a "prevailing party" within the meaning of Sec. 1988. Furthermore, a party who wins only a pendent state claim may be a "prevailing party" under Sec. 1988 if the court has avoided a substantial constitutional claim in the case. Williams v. Thomas, 692 F.2d 1032, 1036 (5th Cir.1982) (no need to decide whether district court erred in jury instruction on qualified immunity to constitutional tort claim; plaintiff prevailed on assault and battery charge and attorneys' fees can be awarded under Sec. 1988; citing Maher v. Gagne, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980)), cert. denied sub nom. Dallas County, Texas v. Williams, 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). But a party who wins pendent state claims while losing all federal claims is not entitled to fees. McDonald v. Doe, 748 F.2d 1055, 1057 & n. 13 (5th Cir.1984) (circuits are unanimous on this issue). In the case before us, the federal courts have not avoided a substantial constitutional claim; both the district court and our Court have held that the plaintiffs' federal claims are moot. Therefore, the plaintiffs can "prevail" in this case only if they prevailed on their federal claim.
 
 
 12
 The plaintiffs argue they prevailed on their federal claim because they "vindicated" their constitutional rights. The district court said as much in its opinion. Op. at 5. Unfortunately, neither the parties nor the district court have addressed the well-established standard in our Circuit for determining the "prevailing party" status of a plaintiff whose claims are mooted by settlement or by subsequent unilateral acts of the defendant.
 
 
 13
 In order for the plaintiff to "prevail" without obtaining formal legal relief, the district court must find that the plaintiffs' lawsuit was " 'a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior.' " Hennigan, 749 F.2d at 1152 (quoting Garcia v. Guerra, 744 F.2d 1159, 1162 (5th Cir.1984), cert. denied, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985), in turn quoting Robinson v. Kimbrough, 652 F.2d 458, 466 (1981)).[7] Whether or not plaintiffs' lawsuit was a substantial cause of defendants' corrective actions is a question of fact; the district court's answer will stand on appeal unless clearly erroneous. Williams v. Leatherbury, 672 F.2d 549, 551 (5th Cir.1982).
 
 
 14
 In this case the district court approached the issue closely but never made the crucial finding:
 
 
 15
 [T]he case law in this circuit is clear in stating that a plaintiff who causes an entity to change its policy is the prevailing party. See Hennigan. In our situation, however, the testimony [that] was adduced at trial as to the exact reason for the City's change in policy was ambiguous at best. We do recognize, of course, that the employees for a defendant-entity may be averse to admitting the reason for a change in policy where they know that the entity will incur damages based on their statements.
 
 
 16
 Op. at 8 (citation omitted). Therefore, we must vacate the award and remand for a factual determination of causality. See Robinson, 652 F.2d at 466 (remanding for causal determination); Criterion Club of Albany v. Bd. of Comm'rs of Dougherty Cty., 594 F.2d 118 (5th Cir.1979) (same).[8] If the district court determines that the plaintiffs prevailed on their federal constitutional claims, then they are "prevailing parties" within the meaning of Sec. 1988 and the district court should fix and award attorneys' fees. If not, they may not recover under Sec. 1988 because they will have lost on all federal grounds.
 
 
 17
 VACATED AND REMANDED.
 
 
 
 [1]
 Shortly after trial, the Supreme Court ruled in Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), that the qualified immunity of the individual defendants does not shield a municipality from liability for damages if the municipality is otherwise liable under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On appeal, plaintiffs' counsel calls Owen a "revolutionary proclamation," but the Fifth Circuit anticipated the outcome in Owen long before. See Hander v. San Jacinto Junior College, 519 F.2d 273, 277 n. 1 (5th Cir.1975) (junior college liable despite qualified immunity of individual defendants)
 
 
 [2]
 In Brown v. Texas the Supreme Court unanimously ruled that it was unconstitutional to convict someone under the Texas statute unless the arresting officer could have made a Terry stop; in other words, unless the officer had a reasonable suspicion that the defendant had engaged in criminal conduct. See Brown v. Texas, 443 U.S. at 53, 99 S.Ct. at 2641; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court hinted broadly that the statute might be unconstitutional even in the context of a legitimate Terry stop. 443 U.S. at 53 n. 3 & Appendix, 99 S.Ct. at 2641 n. 3 & Appendix; cf. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A district court later held the statute unconstitutional in a habeas proceeding, Spring v. Caldwell, 516 F.Supp. 1223, 1231 (S.D.Tex.1981), but our Court reversed on the grounds that the district court did not have habeas jurisdiction since the petitioner was not and would not be incarcerated. Spring v. Caldwell, 692 F.2d 994, 998 (5th Cir.1982). The facial constitutionality of Sec. 38.02 was explicitly left open again in Trejo v. Perez, 693 F.2d 482 (5th Cir.1982), which turned on the qualified immunity of the arresting officer
 
 
 [3]
 The district court's calculus can be represented like this:
 CLAIM/SUBCLAIM % OF CASE % EARNED
1. Claim I:
 (rights under
 Brown v. Texas)
 --------------
 a. subclaim 1: 11 1/9 11 1/9%
 ("vindication" of
 rights)
 b. subclaim 2: 11 1/9 5 5/9%
 (damages)
 c. subclaim 3: 11 1/9 5 5/9%
 (injunction)
2. Claim II: 33 1/3 0%
 (declaration that Sec. 38.02
 is unconstitutional)
3. Claim III: 33 1/3 33 1/3%
 (state tort claims) --------- --------
 TOTAL 100% 55 5/9%
 
 
 [4]
 See Hensley, 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11 ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' ")
 
 
 [5]
 "Under the Hensley analysis, then, the first legal issue that we must address is whether or not Plaintiffs 'prevailed.' " Op. at 5
 
 
 [6]
 "In our view, however, Hensley requires us to go beyond a mere determination of who won and determine the extent of Plaintiffs' success." Op. at 7 (emphasis in original)
 
 
 [7]
 Hennigan is the leading case on this issue. It sets up a simple dialectic. First, the plaintiff must show that the lawsuit was a substantial cause of the change in policy. Second, if the defendant changed its policy because of the suit, but did so only gratuitously or to avoid litigation and not because the plaintiffs' legal position was meritorious, the defendant can avoid paying attorneys' fees by "demonstrat[ing] the worthlessness of the plaintiff's claims and explain[ing] why he nonetheless voluntarily gave the plaintiffs the requested relief." 749 F.2d at 1153
 There is little doubt in this case that the plaintiffs' claims were meritorious in the abstract. But it is not clear they had standing to bring them because they made no showing that they would be subject to the illegal policy again. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (victim of illegal chokehold has no standing to change police department policy by injunction). The defendants, however, seem never to have realized this, so the standing issue should not enter into the determination of whether this lawsuit was a substantial cause of the City's policy change.
 
 
 [8]
 Because it is not clear whether the plaintiffs "prevailed," there is no need to reach the propriety of the district court's method of determining the degree of success, or the amount of the award. We note, however, that the district court's method is unlikely to survive an appeal to this court if Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), and its progeny have any bite after Hensley and Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Compare Nisby v. Commissioners Court of Jefferson County, 798 F.2d 134, 137 (5th Cir.1986) (reversing attorneys' fee award based on a "lodestar" calculation because "the district court did not evaluate specifically the applicability of each of the Johnson factors"; Hensley and Blum do not alter the rule of Johnson ), with Brantley v. Surles, 804 F.2d 321, 326 (5th Cir.1986) (upholding award where district court dismissed a number of Johnson factors without discussion; "This is sufficient here because we can say the overall fee calculation meets the Supreme Court's guidelines in Blum and Hensley.")