**Loretta B. CORBETT, Plaintiff,**

v.

**WILD WEST ENTERPRISES, INC., a Nevada corporation, Defendant.**

**Civ. No. N–88–29 BRT.**

United States District Court, D. Nevada.

May 5, 1989.

John N. Schroeder, Reno, Nev., and Jan Coplick Bush, San Francisco, Cal., for plaintiff.

A.D. Jensen, Reno, Nev., for defendant.

## ORDER ALLOWING ATTORNEYS' FEES

BRUCE R. THOMPSON, District Judge.

Plaintiff moves for her attorneys' fees pursuant to Local Rule 205-18 based upon 42 U.S.C. § 2000e–5(k), which entitles prevailing parties to reasonable attorneys' fees.

The instant motion comes before the Court as a result of plaintiff's partial success in the case tried before the Court from January 24, 1989 until January 27, 1989. The action grew out of the facts alleged in plaintiff's complaint, filed January 11, 1988, which contained a demand for a jury trial, three common law causes of action—breach of an express or implied employment contract, breach of the implied covenant of good faith and fair dealing, and the ubiquitous intentional infliction of emotional distress—and the federal cause of action, unlawful discrimination in employment practices based on pregnancy and gender under 42 U.S.C. § 2000e–5(b) & (k), upon which plaintiff only partially prevailed. The action represented a routine claim for wrongful termination based on pregnancy. Plaintiff's complaint sought the full panoply of remedies, particularly contract damages, pain and suffering damages, lost wages and interest thereon, punitive damages, reinstatement, and a permanent injunction against defendant, its agents, successors and codiscriminators.

The Court docket reflects no extraordinary efforts on behalf of either party's counsel to impede the progression of this case to trial. This is evident from the fact that this action proceeded from service to trial in almost one year. Shortly before trial, defense counsel correctly showed the common law causes to be barred by statute of limitations. Consequently, the Court dismissed the three common law causes of action on January 20, 1989, thereby simplifying the issues for trial.

Trial began January 24, 1989. Counsel for each party represented his client competently; yet only routine and ordinary employment discrimination issues were involved, which did not require extraordinary skill and expertise. Trial ended three and a half days later. At the trial's conclusion, the Court found in favor of each party on distinct issues. For the plaintiff, the Court found discrete incidents of discrimination by reason of defendant's termination of

plaintiff due to pregnancy, and also by reason of defendant's failure to rehire plaintiff when it increased its work forces for a short time. As a result, plaintiff was entitled to back pay in the amount of $35,-000 plus about $10,000 in interest. For the defendant, the Court found no general practice of discrimination against women and no reason to assume plaintiff would be transferred to a nondefunct casino when the Star Casino closed its doors on October 19, 1985. Plaintiff was therefore not entitled to front pay which could have amounted to hundreds of thousands of dollars and also not entitled plaintiff to permanent injunction. Defendants therefore prevailed on all the contract issues, tortious breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, punitive damage, general broadscale discrimination issues, as well as the issue of transfer to another existing casino. In other words, defendant prevailed on the common law wrongful termination issues and a substantial portion of the Title VII action. Plaintiff only showed two discrete incidents of discrimination which were related to defendant's deteriorating economic condition. After plaintiff was hired, defendant's casino operations began losing money. Defendant began a process of layoffs of the work force. Unfortunately for plaintiff, defendant failed to accommodate her when she began to outgrow her cocktail waitress uniform. Instead of giving her the opportunity to modify her uniform, defendant terminated her, contending her termination was a result of work force reductions. Although the deteriorating conditions may have constituted the motive for plaintiff's termination, defendant's failure to allow plaintiff to modify her uniform was discriminatory, because her pregnancy did not impede the performance of her duties and less senior employees were not terminated. Since plaintiff was permanently separated from defendant, she was required to make formal application for rehire. Insistence on this process prevented defendant from rehiring plaintiff when defendant's business improved even though employees with less seniority were rehired. This was discrimination. However, plain-tiff failed to show that she would have been transferred to continuing operations no longer owned by defendant and that defendant had a pattern of discrimination against women. Thus, defendant only prevailed in vindicating past individual rights based on two narrow, discrete acts of discrimination.

Based on these facts, plaintiff submits an application for attorneys' fees for $103,-924.19 enhanced by a factor of 2 for a total of $207,848.38. Astounding! Six attorneys can turn an ordinary employment discrimination case, where only partial success was achieved, into a veritable gold mine. For a short, routine trial, six attorneys billed 687.1 hours at hourly rates of $110, $125, $150 and $225. Counsel then argue that they are entitled to an enhancement of two because they accepted this matter on contingency fee contract.

Plaintiff's counsel John N. Schroeder originally obtained the case and requested that Alan C. Davis work with him on it. Thereafter, Mr. Davis and his associates handled the case, and Mr. Schroeder acted merely as local counsel. For his services, Mr. Schroeder seeks 160.00 hours at $125 per hour for a total of $20,000. Mr. Davis only supervised the case and assigned it to a first-year associate, Nancy E. Resnick, who researched and drafted the complaint, billing 25.3 hours at $110 an hour for a total of $2,703. An expensive complaint! Ms. Resnick left the firm, and Mr. Davis reassigned it to Ms. Jan M. Coplick, an attorney who just entered practice in United States law in 1986. Ms. Coplick also had some legal experience in a foreign country which has unknown relationship to the jurisprudence of the United States. Nevertheless, for purposes of judging her American experience, Ms. Coplick had at most twenty months' experience when she received the file from Mr. Davis. Ms. Coplick managed the file and tried the case before the Court. For her services, she seeks $72,255 for 481.7 hours at $150 an hour. Two other young attorneys, Ms. Diane R. Ravnik and Mr. Robert A. Jones seek $770 and $45, respectively. Ms. Ravnik performed basic research. Mr. Jones

bills for an unconfirmed conference with Ms. Coplick. Finally, Mr. Davis accepted the case, supervised its progress, and gave advice to his young lawyers. For this, he seeks $2,880 for 12.8 hours at $225 an hour. Counsel for plaintiff also seek costs.

"Prevailing parties" are entitled to *reasonable* attorneys' fees in a Title VII claim. 42 U.S.C. § 2000e–5(k); *see* Local Rule 205–18. Plaintiff is a prevailing party having partially prevailed on her Title VII claim and is entitled to attorneys' fees. *Texas State Teachers Association v. Garland Independent School District,* —— U.S. ——, ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (Justice O'Connor: "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit' the plaintiff has crossed the threshold to a fee award of some kind."). Yet the determination of reasonable attorneys' fees causes much litigation and debate in the federal courts. To wit, a simple computer search on attorney's fees in Title VII and civil rights cases finds 323 cases in the Ninth Circuit Court of Appeals alone.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) provides the guidance [1] for our fact situation. Justice Powell, writing for the Court, declared: "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* at 433, 103 S.Ct. at 1939. "The district court also should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Id,* at 434, 103 S.Ct. at 1939. The Court more recently reemphasized the concept of "reasonableness," stating: "Fee awards are to be *reasonable,* reasonable as to billing rates, reasonable as to the number of hours spent in advancing the successful claims." *Blanchard v. Bergeron,* —— U.S. ——, 109 S.Ct. 939, 946, 103 L.Ed. 2d 67 (1989). "It remains for the district court to determine what fee is reasonable." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939.

The district court determines a reasonable fee based on a "hybrid" approach:

Under this 'hybrid approach' to the calculation of a reasonable attorney's fee for the prevailing party, courts must first calculate a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Next, the court may increase or reduce the presumptively reasonable lodestar fee, see *Quesada v. Thomason,* 850 F.2d 537, 539 (9th Cir. [19]88) (citing *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)), with reference to the Johnson/Kerr factors that have not been subsumed in the lodestar calculation, see *Wood v. Sunn,* 852 F.2d 1205, 1212–13 (9th Cir. [19]88) (identifying several factors that have been subsumed); *Clark v. City of Los Angeles,* 803 F.2d 987, 990 & n. 3 (9th Cir.1986).

*Cunningham v. County of Los Angeles,* 869 F.2d 427 (9th Cir.1989). The Johnson/Kerr factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fees is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Subsumed in the analysis of "reasonable rates" multiplied by "reasonable hours" are "the novelty and complexity of the issues," "the special skill and experience of counsel," "the quality of the representa-

---

**1.** *Hensley* sought fees under 42 U.S.C. § 1988, but the Court stated the standards set forth "are generally applicable in all cases in which Con-gress has authorized an award of fees to a 'prevailing party.'" *Hensley,* at 433 n. 7, 103 S.Ct. at 1939 n. 7.

tion" and the "results obtained" factors. *Wood v. Sunn,* 852 F.2d 1205, 1212–13 (9th Cir.1988) *citing Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–1549, 79 L.Ed.2d 891 (1984). Thus, the Court must first find "reasonable rate" to be multiplied by "reasonable hours" to arrive at a lodestar calculation by considering, among others, the applicable subsumed factors. *Hensley, supra,* 461 U.S. at 433, 103 S.Ct. at 1939.

### LODESTAR CALCULATION

■ Plaintiff argues that "reasonable rates" factor is determined by the locality of San Francisco, citing *Maceira v. Pagan,* 698 F.2d 38 (1st Cir.1983) and *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982), *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The authority cited does not support plaintiff's argument, but instead holds the rates of the "locality where the cause is heard" governs the "reasonable rate," unless the out-of-town counsel brings to the case unavailable necessary skill and expertise. The *Chrapliwy* court wrote: "If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge in his discretion, might allow only an hourly rate which local attorneys would have charged for the same services." 670 F.2d at 768. The *Maceira* court concurs in principle, holding "The reasonable hourly rate is usually stated to be 'that prevailing in the community for similar work.' [citation omitted]." 698 F.2d at 40. "Where it is unreasonable to select a higher priced outside attorney—as, for example, in an ordinary case requiring no specilized abilities not amply reflected among local lawyers—the local rate is the appropriate yardstick." *Id.* As stated above, this case is ordinary and should be governed by the prevailing rates in the Reno area. *See Maldonado v. Lehman,* 811 F.2d 1341, 1342 (9th Cir.1987) ("reasonable community standard" not "customary billing rate" to be applied).

The local rates for attorneys for ordinary work is $75 per hour to $150 per hour, as evidenced by the testimony of Lawrence Semenza and by other fee applications submitted to this Court. Rates in excess of $150 per hour reflect both exceptional skill and experience *and* complex issues not present here. Nor do the results here achieved warrant a rate in excess of $150 per hour.

Mr. Schroeder charges from $80 per hour up to $125 per hour. These rates apparently vary based on the nature of work performed. In this case, Mr. Schroeder merely acted as local counsel, performing little research, discovery and little or no assistance at trial. Consequently, he is entitled to the lower rate of $80 per hour. Ms. Resnick, a first-year associate, researched and drafted the complaint and is only entitled to the rates of new attorneys of $75 per hour. Ms. Coplick had at most only twenty months experience in the practice of law in the United States. She managed and litigated the case. That she is experienced is belied by the record of her time sheets. She "conferred" with senior counsel Mr. Davis about strategy a claimed *seventeen* times for more than *thirty* hours. The actual number of conferences is questionable, a fact discussed later, but the need to confer reflects inexperience. Counsel may not argue on one hand "I am experienced and entitled to a high rate," and on the other hand exhibit inexperience by compounding the billing exponentially through necessary conferences on strategy with more experienced counsel. Having observed Ms. Coplick's ability personally and on the basis of the record, and based on the Court's judgment of reasonable rates in Reno of attorneys of like skill and experience, the Court concludes that $80 per hour is a reasonable rate. Mr. Jones, for reasons discussed in the reasonable hours expended portion of this order, should receive no hourly rate. Ms. Ravnik, having only performed simple research as a young associate, is entitled to $75 per hour. Finally, Mr. Davis claims he is entitled to his customary billing rate of $225 per hour. The Ninth Circuit holds the "customary billing rate" does not control but the "reasonable community standard." *Maldonado, supra.* In Reno, a rate of

$225 an hour is only justifiable if the attorney has both exceptional experience and skill *and* the issues involved are complex and difficult. Even assuming the first prong is established, plaintiff cannot establish the second. All Mr. Davis did was supervise and advise his young associates. He is therefore entitled only to $150 per hour, even assuming substantial skill and experience.

■ Turning to the evaluation of the "reasonable hours expended" factor, the Court notes "a judge is not required to accept an attorney's valuation of his own time," *Chrapliwy*, at 767, and "[t]he district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley, supra*, 461 U.S. at 434, 103 S.Ct. at 1939. Plaintiff claims the reasonably expended hours are 687.1, or 481.7 hours for Ms. Coplick, 160 hours for Mr. Schroeder, 25.3 hours for Ms. Resnick, 12.8 hours for Mr. Davis, 7.0 hours for Ms. Ravnik, and 0.3 hours for Mr. Jones. These hours were not reasonably expended and are excessive.

The Court relies upon two principle factors in reducing the excessive hours expended to the amount the Court finds reasonable: inadequate documentation and results obtained. The Court also offers several alternative analyses. Inadequate documentation as grounds for reduction of the overall fee is justified. *Hensley, supra; Cunningham, supra; see Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978) ("we do not view with sympathy any claim that the district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.").

Three classes of inadequate documentation permeate this fee application: patent exaggeration,[2] lumping of duties together without specific allocation of time for specific duties, and inadequate description.

The Court cites two examples of patent exaggeration, but uncovering all incidents of exaggeration is not possible because the inadequate description and lumping of duties obscure their detection.

In the instance of two routine conferences held by this Court, plaintiff's counsel submits a bill of $1,075 for services which should have been billed at $60. The habit and custom of this Court is to schedule two routine court appearances. These were held in this case. On May 20, 1988, in a scheduling conference set for 9:00 a.m., Mr. Schroeder and Ms. Coplick attended the conference from 9:07 until 9:10 a.m. Since the meeting was set for 9:00 o'clock, counsel could legitimately bill ten minutes or maybe even fifteen minutes, but not the amount of time they billed. There is also no legitimate reason to have two attorneys at a scheduling conference. They are routine, a fact known to Mr. Schroeder, and usually entail the setting of discovery deadlines. This is all that occurred here. Mr. Schroeder billed *one* hour for the ten minutes. Ms. Coplick billed three hours for travel to Reno, five hours for court conference and travel back home, or *two hours* for the ten minutes, plus the additional six hours for travel.

The same events occurred on October 7, 1988, the date of the pretrial conference. Pretrial conferences involve a few more matters and begin at 9:30 a.m. Fridays. The pretrial conference here began at 9:31 and ended at 9:50 a.m. Any lingering discovery problems were resolved and the trial date was set. All this information could have been conveyed to Mr. Schroeder by telephone. Twenty minutes to thirty minutes were billable. Yet, Mr. Schroeder again billed one hour, Ms. Coplick billed her usual *two* hours plus six hours travel and an additional 4.5 hours, and Mr. Davis—who in his affidavit says he intended to let Ms. Coplick litigate the action—billed *one* hour. The sum total of their services charged $1,075 for attendance and $1,800 for travel for $40–$60 worth of services.

2. The use of the words "patent exaggeration" in this order does not imply dishonesty or absence of professional integrity. There is nothing in the record before the Court to support an inference or conclusion that any attorney intentionally exaggerated the time devoted to the case. It would be more accurate to state that too much time had been spent on the particular problem or proceeding and that some of it was not compensable.

This is not the last of the examples of patent exaggeration which the Court can spot in spite of lumping and inadequate descriptions. Mr. Jones bills 0.3 hours for a conference with Ms. Coplick on May 3, 1988. Ms. Coplick makes no mention of it whatsoever unless the cryptic notation of August 19, 1988, three and a half months later, is supposed to reflect this conference. Ms. Coplick notes a possible twenty "strategy conferences" or "consultations" totalling 35.8 hours. Seventeen of those conferences or consultations were ostensibly with Mr. Davis, yet he only records seven conferences for a total of 5.1 hours. Two are with Mr. Schroeder and he does not reflect one on August 31, 1988. These examples show a pattern of patent exaggeration the depths of which cannot be fully discovered in light of the other documenting deficiencies. This flaw alone warrants substantial reduction of counsel's "reasonable hours."

The impact of lumping and inadequate description is greater when blended together. Together they act as the musical notes of a chord creating a harmonic effect. However, the harmonic effect created by lumping and inadequate documentation amplifies exponentially the impediments in evaluating whether specific hours were expended reasonably on specific duties. The harmonic effect of these types of inadequate documentation is especially pronounced when many dates and hours are combined.

Examples of lumping by Mr. Schroeder are his entries:

03/03/88 Telephone call with Atty. Davis; dictation; review of Atty Jensen correspondence.—30 minutes.

05/19/88 Preparation for court hearing; review of mailing received; telephone call with Atty. Coplick—1 hour.

08/31/88 Review of Atty. Jensen letter; telephone calls with court reporter; dictation of motion, points and authorities and order. Conference with court reporter; review of NESD letter; dictation of supplemental response to requests for production; other dictation—4 hours.

1/23/89 Conference with Atty. Coplick; dictation of findings and conclusions; conference with client and Dr. Coleman;

research at law library—9 hours 15 minutes.

Examples of lumping by Ms. Coplick:

4/21/88 Review file; formulate issues; outline discovery—1.5 hours.

4/22/88 Review file; consult with Alan Davis; research—3 hours.

8/5/88 Summarize depositions and prepare further discovery; phone call from Jack Schroeder re timeliness—2.8 hours.

Inadequate description is extant in several forms. Telephone communication subject matter is unlabeled in many instances. Many entries labeled research are not defined. If they are defined, they show no progression of thought. It is impossible to divide the hours spent on the purely state issues from those which are purely federal. Proper description would have permitted such division. The Court therefore concludes patent exaggeration justifies reduction, and lumping and inadequate description provide additional support for reduction.

"Mathematically it is inconsequential whether the lodestar figure itself is adjusted for lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court d[oes] not 'count' for lack of success twice." *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1465 (9th Cir.1989). It is easier to adjust the reasonable hours component here. "In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley, supra* 461 U.S. at 434, 103 S.Ct. at 1939. The "test for relatedness of claims is not precise." *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir.1986). The *Thorne* decision cites a few analyses:

In a post-*Hensley* decision, the Seventh Circuit focused on whether the claims 'seek relief for essentially the same course of conduct.' Thus, the test is whether relief sought on the unsuccessful claim 'is intended to remedy a course

of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.' *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir. 1983) (course of conduct giving rise to unsuccessful false arrest and excessive force claims was distinct and separate from course of conduct giving rise to injury from subsequent strip search, the constitutional claim upon which plaintiff was successful); *Spell v. McDaniel,* 616 F.Supp. 1069, 1083 (E.D.N.C.1985) (successful claims against police officer for assault and unsuccessful claim against a supervisory defendant for permitting and encouraging police abuse were related).

Other courts evaluating relatedness have considered whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether the evidence concerning one issue was material and relevant to the other issues. *See Vaughns v. Board of Education of Prince George's County,* 598 F.Supp. 1262, 1272–74 (D.Md.1984), *aff'd,* 770 F.2d 1244 (4th Cir.1985); *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 581 (9th Cir.1984) (reduction of fees not required because claims of successful plaintiff were essentially identical to claims of unsuccessful party represented by the same attorneys; they concerned the same dispute and would have required the same amount of trial preparation regardless whether other plaintiff remained a party), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985).

Irrespective of which analysis is followed, the Title VII claim on which plaintiff was successful is related to the portions on which plaintiff was unsuccessful. The state claims were also related because they turned on the propriety of the termination. Now, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley, supra* 461 U.S. at 435, 103 S.Ct. at 1940. "[C]ourts may not adopt rigid mathematical formulas tying the lode-

star figure to the ration" of success on number of claims or against number of defendants. *Cunningham, supra.* The Court should consider " 'the significance of the overall relief obtained' to all the claims and remedies pursued in the litigation." *Greater Los Angeles Council on Deafness v. Community Television of Southern California,* 813 F.2d 217, 222 (9th Cir.1987) (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940); *see Avila v. Coca–Cola, Inc.,* 849 F.2d 511, 514 (11th Cir.1988) ("A plaintiff obtains limited success when the substantive relief granted is something less than that which he would have been granted had he succeeded on the unsuccessful claim.") Under the Title VII claim, plaintiff sought back pay, initially reinstatement but later front pay, and an injunction. Plaintiff only received back pay plus interest. If she had been able to present evidence on transfer, front pay could have been substantial. Yet plaintiff's evidence was only speculative at best. Additionally, plaintiff sought an injunction for pervasive systemic unlawful discrimination on the basis of gender. Plaintiff's evidence supporting systemic discrimination was insufficient to prove broad-based discrimination. All plaintiff could prove were two discrete incidents of past discrimination. She therefore only vindicated her own rights and did not provide any broad-based relief. The Court therefore concludes that counsel are entitled to reasonable hours in the following amounts based on the inadequate documentation and the limited success achieved: 200 hours for Ms. Coplick, 80 hours for Mr. Schroeder, 10 hours for Mr. Davis, 10 hours for Ms. Resnick, 2 hours for Ms. Ravnik, and no hours for Mr. Jones, which multiplied by the reasonable rates amount to: $16,000 for Ms. Coplick, $6,400 for Mr. Schroeder, $1,500 for Mr. Davis, $750 for Ms. Resnick, and $150 for Ms. Ravnik, totalling $24,800. The additional fact that plaintiff failed on all three of her state claims reaffirms the Court's conclusion that the foregoing fee is reasonable. *See Heath v. Brown,* 807 F.2d 1229 (5th Cir. 1987) (state claims may be considered for attorneys' fees if they advance any significant constitutional policy objective); *Zab-*

*kowicz v. West Bend Co., Division of Dart Industries,* 789 F.2d 540, 551–52 (7th Cir. 1986) (Court may consider success or lack of success on state claims in determining reasonableness of attorneys' fees); *Lawrence v. City of Philadelphia,* 700 F.Supp. 832, 834 (E.D.Penn.1988) (plaintiff only recovered against individuals, and failed to recover against city on § 1983 claim and on the state claims; this fact is relevant in attorneys' fees evaluation).

Consideration of the remaining subsumed Johnson/Kerr lodestar factors only reinforces the Court's conclusion. For example, the hourly fee, skill of counsel, and reputation of the attorneys have already been accounted for. The contingency factor will be discussed later. The amount of award obtained would not justify a larger award. Employment discrimination cases under Nevada state law are not undesirable despite what plaintiff contends, because Nevada juries have viewed the requests of terminated employees favorably. Thus, no change is warranted of the presumptively valid lodestar figure. The remaining nonsubsumed factors do not support any deviation.

The Court could arrive at the $24,800 fee award on any one of the three alternative analyses: awards in similar cases, *Hensley* exclusion of hours unreasonably expended, or the analysis of *Sas v. Trintex,* 709 F.Supp. 455 (S.D.N.Y.1989).

A comparable award can be seen in *Recanzone v. Washoe County School District,* 696 F.Supp. 1372 (D.Nev.1988) a case from late 1988 which was before this Court. *Recanzone* involved novel issues under § 504 of the Rehabilitation Act, a plaintiff's attorney of exceptional skill and expertise, and superior results on all significant issues. Moreover, the defendant there is still in business and thus subject to deterence from future discriminatory acts. Defendant here is defunct, and deterence does not apply. *See McCann v. Coughlin,* 698 F.2d 112, 129 (2d Cir.1983). Plaintiff in *Recanzone* was awarded $74,000, and her counsel sought $53,055 in fees. This Court awarded $30,000. Here the Court awards $24,800 even though the issues were routine and much less complex than in *Recan-*

*zone,* the results in *Recanzone* were superior, and significant social change was achieved in *Recanzone.* The award made here is more generous in light of all the factors, and no upward adjustment could be justified as a result of the comparisons.

The Court notes that *Hensley* allows exclusion of all unreasonable hours, discretion to reassess all statements of hours expended, and discretion to set a reasonable fee. After fifty years of law practice, as counsel for the government, private parties and 25 years on the bench, the Court can reasonably estimate the number of hours needed to litigate this case. The case involved basic issues of pregnancy discrimination and the bar of statute of limitations affecting state law causes of action. Minor motions to compel were filed and one motion for summary judgment which was granted. The trial lasted only 3½ days. Based on these factors a fee of $24,800 is fair. A larger fee would be excessive.

Finally, the Court notes the Trintex analysis permits courts to compare the size of the award with the size of attorneys' fees where plaintiff only vindicated singular individual rights and effected no significant social change. The Court explains:

With respect to the manner in which the judgment was obtained, i.e., by acceptance of an offer of judgment that was imprudently made, the court does not believe that should be a reason for reducing the fee award. However, the amount recovered, an insignificant $5,000, is a very pertinent factor to consider. Admittedly, for some civil rights actions the relief obtained is relatively inconsequential. Many of these actions, however, particularly those brought on behalf of a class, achieve important constitutional goals, and the efforts of counsel in realizing them should be rewarded. Cases of that nature, however, are far removed from the situation here, which involves a straight-forward claim of individual employment discrimination with identifiable money damages flowing therefrom. It is simply an action to recover money damages involving no great or unsolved constitutional principles.

Moreover, it has been said, with only a slight bit of exaggeration, that the employment discrimination laws now cover all but the white. Anglo–Saxon males in their 20s and 30s who are in good health and have only the most conventional of sexual interests and religious preferences. Since virtually everyone is protected by legislation, therefore, anyone whose employment is terminated and even those who resign because they do not like the job are free to assert their claims in federal 'civil rights' litigation. Such suits have little in common with the great civil rights cases that rendered such profound changes in our society in the last 20 or 30 years. This action and others like it seek to recover money and not to vindicate constitutional rights per se. Consequently, the amount recovered should be an important guide to the reasonableness of the attorney's fees award.

Indeed, beyond cases involving procedural claims with amorphous damage assertions, the result obtained is a consideration in civil rights litigation where actual damages are more readily quaintifiable, in such cases, if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended ... times a reasonable hourly rate may be an excessive amount.' *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*Trintex, supra.*

Plaintiff naturally raised the argument that civil rights fee awards are not supposed to be based on the size of the award, because the cases vindicate important constitutional rights and often effect broad social change. The Court distinguished plaintiff's authority:

Plaintiff relies heavily on *Riverside v. Rivera*, 477 U.S. 561, [106 S.Ct. 2686, 91 L.Ed.2d 466] 54 LW 4845 (1986), which held: '[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seems to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.' Con-

sequently, the court concluded that fee awards are not conditioned upon and need not be proportionate to an award of money damages. *Rivera*, however, is a true civil rights action under 42 USC 1983 involving deprivation of constitutional rights (a warrantless intrusion by police accompanied by the excessive use of force). Legally and factually it is far removed from the instant employment discharge case involving primarily statutory rights and an isolated act of alleged discrimination. On those bases alone *Rivera* is of somewhat limited authority here.

Further, *Rivera* was a 4–1–4 decision. The concurring opinion of Justice Powell, which creates the majority, constitutes the controlling law. He noted that '[w]here recovery of private damages is the purpose of the civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' He further observed that '[i]t probably will be the rate case in which an award of private damages can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case.' He found, however, that there was an important public interest served by that litigation and concluded: 'In sum, despite serious doubts as to the fairness of the fees awarded in this case, I cannot conclude that the detailed findings made by the District Court, and accepted by the Court of Appeals, were clearly erroneous, nor that the District Court abused its discretion in making this fee award.'

Under all these circumstances, the appropriate attorney's fees for plaintiff is $7,500, plus costs of $1174.98.

*Trintex, supra.* In the instant case, plaintiff was awarded $35,000 plus $10,000 in interest, and the Court sets the presumptively reasonable lodestar figure at $24,-800. The Court believes the *Trintex* analysis also supports this amount. Plaintiff effected no broad social change and her case will have no future deterent effect. She only vindicated two acts occurring dur-

ing economic turbulence of a now defunct employer. Thus, all three alternative analyses buttress the Court's original conclusion. No factors justify modification.

## ENHANCEMENT

■ Plaintiff claims entitlement to an enhancement factor of two because her counsel accepted her case on a contingent fee contract, citing *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 3090–91, 97 L.Ed.2d 585 (1987); *Fadhl v. City & County of San Francisco*, 859 F.2d 649 (9th Cir.1988). Plaintiff, having not met the requirements of *Delaware Valley II* and *Fadhl*, is not entitled to an enhancement factor.

Justice O'Connor's opinion, although written as a concurring opinion, is considered the opinion of the court. *Fadhl, supra* at 650 n. 1. The test to determine whether enhancement is justified based on a contingency fee: (1) "Compensation for a contingency fee must be based on the difference in a market treatment of contingent fee *cases as a class*, rather than on an assessment of the 'riskiness' of any particular case." (Emphasis in original). *Delaware Valley II*, 107 S.Ct. at 3089. (O'Connor plus Blackmun, Brennan, Marshall and Stevens) (2) "No enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market'" *Delaware Valley*, 107 S.Ct. at 3091 (O'Connor plus White, Powell, Scalia and Rhenquist). *Fadhl, supra.* Plaintiff has satisfied *neither* prong of this test.

Plaintiff must present evidence to show the relevant market compensates the contingency fee factor. Justice O'Connor wrote: "First, District Courts and Courts of Appeals should treat a determination of how a particular market compensates for contingency as controlling future cases involving the *same market*.... Second, at all times the free applicant bears the burden of proving the degree to which the relevant market compensates for contingency. [citations omitted]." (Emphasis

added). *Delaware Valley II, supra* 107 S.Ct. at 3090. "A court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel." *Id.,* at 3091. The Ninth Circuit in *Fadhl* considered the relevant market. *Fadhl, supra* at 650. As the Court discussed in its lodestar calculation, Reno is the relevant market.

Although counsel presents a few affidavits stating discrimination cases are unattractive, it makes no showing how Reno compensates attorneys for them. Ms. Coplick states that termination cases were attractive to attorneys in San Francisco, but recent California Supreme Court authority cuts back that incentive. This incentive exists in Nevada as many large awards have been achieved recently. The Court recognizes that Nevada employment discrimination cases frequently involve plaintiffs incapable of paying for counsel. Effectively all contracts are contingent fee contracts even if they contract on an hourly rate. The Court notes no lack of attorneys willing to accept employment discrimination cases in light of this fact. Plaintiff fails to satisfy the first prong.

Plaintiff presents no evidence that without enhancement for a contingent fee contract she would have had difficulty in obtaining representation. On the other hand, the *Fadhl* plaintiff showed that 34 attorneys rejected her case before one accepted. She bolstered this evidence by testimony from the Executive Director of San Francisco Lawyers' Committee for Urban Affairs that the possibility of enhancement was critical in persuading competent counsel to accept Title VII cases. *Fahdl,* at 651. Plaintiff presents no such evidence here. In other words, the evidence does not indicate that the large enhancements were necessary to attract competent counsel in Reno. Plaintiff has not met either prong of the enhancement for contingency test, and is therefore not entitled to enhancement under this or any other factor. The lodestar fee remains reasonable. Counsel is not entitled to both the fees under the contingency fee agreement and

the statutory award. *Venegas v. Skaggs,* 867 F.2d 527, 534 n. 7 (9th Cir.1989).

Accordingly,

IT HEREBY IS ORDERED that judgment is rendered in favor of plaintiff and against defendant for attorneys' fees in the amount of $24,800.00.