**Henry FAISON d/b/a Faison Associates, et al., Plaintiffs,**

**v.**

**Grant THORNTON, a Partnership, et al., Defendants.**

**No. CV–S–88–0134–LDG–(RJJ).**

United States District Court,
D. Nevada.

Dec. 30, 1993.

Michael Singer & Bradley Shafer, Scott Bogatz and Steve Lane, for plaintiffs.

John Keith, C. Stephen Howard, Thomas Kummer, Marc Gary and James G. Duncan, for defendants.

## ORDER

GEORGE, Chief Judge.

This matter is before the Court on counsel Michael H. Singer ("Singer") and Bradley J. Shafer's ("Shafer") Objection to Magistrate's Order(s) ("Objection to Magistrate's order) (# 167). Singer and Shafer also filed a Memorandum of Points and Authorities in Support of Objection (# 169). Defendant filed a Response (# 170) to the Objection to Magistrate's Order. Singer and Shafer filed a Reply (# 171) to the Response.

On July 6, 1992, the Magistrate Judge entered an Order (# 131) which found that then plaintiffs' counsel Singer and Shafer had violated Nevada Supreme Court Rule 182 ("SCR 182") by having *ex parte* communications with a defendant who they knew was represented by counsel. The Magistrate Judge granted defendants the following relief based on Singer's and Shafer's professional misconduct:

(1) A protective order was entered which prevented Singer and Shafer from disclosing any of the information which they obtained from these *ex parte* communications or from destroying any records made from these communications.

(2) Singer and Shafer were disqualified as counsel for plaintiffs.

(3) It was ordered that a hearing would be held in the future on defendants' request for reasonable attorneys' fees for having to litigate the disqualification/sanction action.

On October 7, 1993, the Magistrate Judge entered an Order (# 166) which granted to

defendants reasonable attorneys' fees and expenses for having to litigate the disqualification/sanction action. The Magistrate Judge found that defendants were entitled to an award of $46,599.26 in sanctions, as this was the amount of the attorneys' fees. Singer and Shafer then filed their Objections to the Magistrate Judge's Order. Not only do Singer and Shafer object to the Magistrate Judge's October 7, 1993 Order, but they also object to the Magistrate Judge's July 6, 1992 Order, which they argue was an order interrelated to the October 7, 1993 Order.

Federal Rules of Civil Procedure ("Rule") 72(a) requires that objections to a magistrate's order be made within ten days after being served with a copy of such order, or a party may not thereafter assign as error a defect in the magistrate's order. Further, Local Rule 510–1 states the following:

> A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to Rule 500–3 [1] of these rules where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law. Therefore, any party dissatisfied with the ruling of the magistrate judge on the pretrial matter may file with the clerk and serve upon the opposing party within 10 days from the date of service of the magistrate judge's ruling specific written objections to the magistrate judge's ruling together with points and authorities in support thereof. The opposing party shall within 10 days thereafter file and serve upon the objecting party points and authorities relative to the objections.

Local Rule 510–1.

■ Pursuant to Local Rule 510–1 and 28 U.S.C. § 636(b)(1)(A), the Court has reviewed the Magistrate Judge's July 6, 1992 Order and his October 7, 1993 Order. As to Singer and Shafer's objections to the July 6, 1992 Order, the Court considers such objections as untimely made and therefore, the Court will not reconsider this order. Singer and Shafer argue that the July 6, 1992 Order had left open the issue of the amount of sanctions and that is why they did not object

to the order until after sanctions had been entered. They argue that the two orders are so related that it was proper for them to wait until the entry of the October 7, 1993 Order before objecting to both orders.

This argument by Singer and Shafer is meritless and it is discredited by the specific objections made by them. Singer and Shafer attack the Magistrate Judge's finding that they violated SCR 182. The time to object to such a crucial finding of fact was back in July of 1992 when the finding was made and not in October of 1993, when the only issue litigated was the amount of sanctions. It simply is untenable for Singer and Shafer to argue that they waited a year and a half to object to the merits of the Magistrate Judge's findings because sanctions had not yet been entered against them. Thus, the Court will not consider any of the untimely objections made by Singer and Shafer, but it will consider objections made as to amount of sanctions.

■ Singer and Shafer claim that since they only technically violated SCR 182, that it is unfair to award attorneys' fees in the amount of $46,599.26 against them. They argue that their violation of SCR 182 was not an intentional disregard of ethical conduct. However, Singer and Shafer's conducting of several phone conversations and then a five hour meeting with defendant Gilman knowing full well that he was represented by counsel, is without question a flagrant violation of SCR 182. Given the egregiousness of Singer and Shafer's actions, it was certainly not unfair to require them to pay defendants' attorneys' fees of $46,599.26.

■ Alternatively, Singer and Shafer argue that they should be able to deduct from the amount owed $15,617.06 in attorneys' fees and expenses which were incurred by defendants' counsel in conducting the evidentiary hearing. Singer and Shafer argue that defendants' counsel is to blame for there having to be an evidentiary hearing and therefore, they should not benefit from a situation which they created. This argument is also meritless as Singer and Shafer's viola-

1. Local Rule 500–3 states that a magistrate judge may hear and finally determine any pretrial matter not specifically enumerated as an exception in 28 U.S.C. § 636(b)(1)(A).

tion of SCR 182 foreseeably caused any subsequent legal proceedings and they should have to bear the financial burden of this litigation.

IT IS HEREBY ORDERED that the Magistrate Judge's Order of October 7, 1993 (# 166) is AFFIRMED.

## ORDER

[Filed July 6, 1992]

JOHNSTON, United States Magistrate Judge.

This matter is before the court on defendants' Emergency Motion for a Protective Order (# 109) and the defendants' Emergency Motion for Sanctions (# 110). The plaintiffs' have filed a response entitled Answer to the Emergency Motion for Sanctions. (# 115). On April 13, 1992, and April 14, 1992, a hearing was held on the motions. The defendants argue that plaintiffs' counsel had improper *ex parte* communications with a defendant, and therefore sanctions should be imposed. Plaintiffs' counsel claim that their conduct was not improper and that no sanctions are warranted.

## FACTS

On December 14, 1987, the plaintiffs, Henry Faison d/b/a Faison Associates, Peter Sarron, Stewart Oliver and Karen Tyres, filed a complaint charging the defendants, Grant Thornton, Fox & Company, Alexander Grant & Company, Grant Thornton, Irving J. Steinberg, Richard S. Gilman (Gilman), Clifford R. Beadle and Diane Martono (Martand) Van Son with the fraudulent and improper preparation of International Teldata Corporation's (Teldata) financial statements during the years 1980 through 1984. The plaintiffs are former stockholders of Teldata who lost significant investments as a result of the defendants' alleged fraudulent actions.

Defendant Gilman is a Certified Public Accountant who, along with the co-defendants, allegedly prepared the fraudulent financial statements at issue in this litigation. When

the financial statements at issue were prepared, Gilman and the other defendants were employed by Fox and Company which merged with the accounting firm of Alexander Grant & Company. This firm subsequently changed its name to Grant Thornton.

The plaintiffs in this consolidated lawsuit are represented by Bradly J. Shafer, Esq., (Shafer) an attorney licensed to practice law in Michigan and Arizona, and Michael H. Singer, Esq., (Singer) an attorney licensed to practice law in New York and Nevada. *See* Answer (# 116), Exhibits B (Shafer Affidavit) and Exhibit C (Singer Affidavit). Though his communications with defense counsel have been sparse, Defendant Gilman has been concurrently represented from the beginning of this lawsuit by the firms of Vargas & Bartlett, of Las Vegas, Nevada, and the firm of Mayer, Brown and Platt of Washington, D.C. *See* Motion (# 110), Exhibit C (Gilman Affidavit) and Exhibit D (McCoy Affidavit). These firms are defendant Gilman's counsel of record and have filed numerous pleadings, motions and other papers as defined by Rule 7 of the Federal Rules of Civil Procedure on defendant Gilman's behalf. The following documents have been signed[1] and filed[2] jointly by Thomas F. Kummer, Esq., of Vargas & Bartlett and Stanley J. Parzen, Esq. and Patricia A. McCoy, Esq., of Mayer, Brown & Platt on behalf of Gilman:

a. Motion to Dismiss or Transfer (# 3), filed on January 25, 1988;

b. Motion By All Defendants to Dismiss (# 17), filed on April 19, 1988;

c. Stipulation (# 29), filed on May 9, 1988;

d. Motion of Defendants Richard Gilman, Irving Steinberg and Clifford Beadle to Dismiss Recently Served Complaints (# 35), filed on May 23, 1988;

e. Stipulation For Extension of Time For Defendants to Respond to Plaintiffs' Motion For Leave to Amend Complaint and Plaintiffs' Opposition to Defendants' Motion to Dismiss (# 36), filed on June 1, 1988;

---

**1.** All documents were signed by defendant GILMAN'S counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.

**2.** All documents were filed by defendant GILMAN'S counsel pursuant to Rule 5 of the Federal Rules of Civil Procedure.

f. Defendants' Reply Memorandum in Support of Their Motion to Dismiss the First Amended Complaint and Opposition to Plaintiffs' Motion For Leave to File a Second Amended Complaint (# 39), filed on June 15, 1988;

g. Defendants' Motion For Leave to Serve In Excess of Forty Interrogatories (# 57), filed on December 28, 1988;

h. Defendants' Response to Plaintiffs' Motions For Leave For Withdrawal of Counsel and For Enlargement of Time in Which to Respond to Defendants' Discovery Requests (# 61), filed on February 3, 1989;

i. Defendants' Notice of Deposition (# 87), filed on October 30, 1989;

j. Defendants' Notice of Deposition (# 88), filed on October 30, 1989;

k. Defendants' Notice of Deposition (# 89), filed on October 30, 1989;

l. Defendants' Notice of Deposition (# 90), filed on October 30, 1989;

m. Stipulation and Order For Extension of Discovery Cutoff (# 93), filed on December 1, 1989;

n. Joint Motion By Plaintiffs and Defendants For a Stay of Discovery (# 94), filed on December 11, 1989;

o. Stipulation and Order Respecting Confidentiality of Documents (# 97), filed on April 30, 1990;

p. Stipulation to Extend Time For Filing of Discovery Statement (# 99), filed on September 26, 1991;

q. Joint Discovery Statement (# 100), filed on October 7, 1991;

r. Joint Stipulation of Dismissal of Certain Claims (# 103), filed on December 24, 1991; and,

s. Joint Motion By Plaintiffs and Defendants For Continuation of Trial Date and Extension of Discovery (# 106), filed on March 10, 1991.

Each document was served on plaintiffs' counsel pursuant to Rule 5 of the Federal Rules of Civil Procedure.[3]

Additionally, plaintiffs' counsel served the following documents on defendant GILMAN'S counsel of record, Vargas & Bartlett and Mayer, Brown & Platt, pursuant to Rule 5 of the Federal Rules of Civil Procedure:

a. Plaintiffs' Opposition to Defendants' Motion to Dismiss (# 31), filed on May 16, 1988;

b. Motion By Plaintiffs For Leave to Amend Complaint (# 34), filed on May 16, 1988;

c. Addendum to Plaintiffs' Motion For Leave to Amend Complaint (# 41), filed on June 29, 1988;

d. Notice of Appeal (# 48), filed on November 3, 1988;

e. Notice of Change of Address (# 54), filed on November 7, 1988;

f. Motion for Enlargement of Time to Respond to Defendants' Motion to Strike (# 58), filed on January 10, 1989;

g. Motion For Leave of Court For Withdrawal of Counsel (# 60), filed on January 24, 1989;

h. Motion to Withdraw as Counsel of Record (# 62), filed on February 13, 1989;

i. Motion For Enlargement of Time to Respond to Defendants' Motion (# 63), filed on February 16, 1989;

j. Motion For Enlargement of Time to Respond to Defendants' First Request For Production of Documents to Plaintiffs (# 64), filed on February 21, 1989;

k. Motion For Enlargement of Time to Respond to Defendants' Motion For Leave to Serve in Excess of Forty Interrogatories (# 65), filed on February 21, 1989;

l. Notice of Appearance (# 67), filed on March 3, 1989;

m. Response of Plaintiffs to Defendant Fox & Company's Motion to Dismiss the Complaint (# 70), filed on April 14, 1989;

n. Response of Plaintiffs to Defendant Fox & Company's Motion to Dismiss the

**3.** Singer entered his appearance as counsel of record for plaintiffs on March 3, 1989. (# 67).

Shafer entered his appearance on behalf of the plaintiffs by Verified Petition For Permission to Practice in Case (# 91) on November 17, 1989.

Complaint, (# 71), filed on April 18, 1989;

o. Notice of Non–Opposition to Defendants' Motion to Strike (# 72), filed on May 9, 1989;

p. Substitution of Attorneys (# 75), filed on May 19, 1989;

q. Substitution of Attorneys (# 76), filed on May 19, 1989;

r. Substitution of Attorneys (# 77), filed on May 19, 1989;

s. Substitution of Attorneys (# 78), filed on May 19, 1989;

t. Receipt of Copy (# 90A), filed on November 15, 1989; and,

u. Disclosure of Expert Witnesses (# 105), filed on March 2, 1992.

On May 28, 1991, defendant Gilman called Singer about a criminal case involving Richard Candelaria, the former president of Teldata.[4] *See* Answer (# 116) at 5–6; Transcript of April 13, 1992, Hearing on Motions (Transcript 1) at 20–21. Gilman and Singer are social acquaintances. There was no discussion of this litigation during that conversation. *Id.*

Approximately one week later, defendant Gilman again called Singer. During this conversation defendant Gilman informed Singer that because he (Gilman) had done nothing improper or illegal while employed by Fox & Company, he thought he should not be a named defendant in this litigation. *See* Answer (# 116) at 5. Defendant Gilman also told Singer: (1) that he didn't know if he was represented by counsel; (2) that if he did have counsel, he was not satisfied with their representation; and, (3) that he wished to be released as a defendant in this litigation. *See* Answer (# 116) at 5–6; Transcript 1 at 21–23. Singer informed defendant Gilman that because it was unlikely the plaintiffs could obtain damages from Gilman, Singer did not have any objection to dismissing him

from the case; however, Singer did not expressly promise to dismiss defendant Gilman from the case. *See* Singer Affidavit at 3; Transcript of April 14th Hearing on Motions (Transcript 2) at 46.

On June 10, 1991, after his conversations with defendant Gilman, Singer telephoned Shafer, his co-counsel in this litigation.[5] *See* Answer (# 116) at 6. Singer informed Shafer of his conversations with defendant Gilman and the two discussed the propriety of meeting with Gilman without the presence of defense counsel. *Id.* Shortly thereafter, defendant Gilman and Singer arranged to meet on June 21, 1991, at Singer's Las Vegas, Nevada, office. *See* Transcript 1 at 24. On June 18, 1991, Singer informed Shafer of the meeting and requested that Shafer attend. *See* Shafer Affidavit at 2.

On June 21, 1991, prior to defendant Gilman's arrival, Singer and Shafer met to discuss the ethical propriety of meeting with Gilman. Answer (# 116) at 7. At approximately 10:00 A.M., defendant Gilman arrived at Singer's office. *See* Singer Affidavit at 4; Transcript 1 at 26. Shafer and Singer have stated that prior to any discussion of this case, Shafer informed Gilman that he was entitled to have his counsel present at the meeting. *See* Shafer Affidavit at 3 and Singer Affidavit at 4. Defendant Gilman stated that he was not encouraged to speak with his attorney. *See* Gilman Affidavit at 4.[6] Nevertheless, defendant Gilman did inform Shafer and Singer that he had had little or no contact with his counsel of record and that he strongly believed that he was not represented by counsel. *See* Transcript 1 at 29. Gilman also repeated his desire to be dismissed as a defendant. *See* Gilman's Affidavit at 4.

Singer, Shafer, and defendant Gilman then proceeded to discuss the plaintiffs' theory of the case and to have Gilman review documents and answer questions related to this litigation. *See* Answer (# 116) at 8. At ap-

---

4. Neither Richard Candelaria nor Teldata are parties to this litigation.

5. Mr. Shafer's residence and law office are located in Okemos, Michigan. *See* Transcript 1 at 50.

6. These conflicting statements do not hinder or affect the court's ability to determine whether a

violation of Nevada Supreme Court Rule 182 occurred as a result of Singer and Shafer's *ex parte* communications with defendant Gilman. The fact that is crucial to the resolution of this matter is whether the defendant was represented by counsel. There is no dispute that sufficient evidence has been presented to make that determination.

proximately 12:00 P.M., Shafer, Singer and defendant Gilman went out for lunch together. *See* Transcript 1 at 34 and 70. Upon returning from lunch, the three continued their discussions. *Id.* Between 1:00 P.M. and 2:00 P.M., but prior to the conclusion of the discussions, Shafer left the meeting to return to Michigan. *See* Shafer Affidavit at 4. Singer and defendant Gilman continued to discuss this litigation until approximately 3:00 P.M. when their meeting concluded. *See* Transcript 1 at 26.

Shafer disclosed the contents of the meeting with defendant Gilman to his law partner, and to two other clients. *See* Motion to Limit (# 119). These clients are financing this litigation but are not parties. *Id.*

On March 16, 1992, Singer telephoned McCoy at her Washington, D.C. office regarding depositions and other matters. During this conversation Singer revealed an *ex parte* telephone call he had with defendant Gilman. Singer stated that defendant Gilman had called him, and that they had discussed the substance of the case during the half hour conversation. McCoy told Singer "that he was not permitted to talk with Mr. Gilman because he is an adverse party in this case whom I represent, and that he was not to talk with Mr. Gilman again." McCoy Affidavit at 2. Nevertheless, on March 17, 1992, during a telephone call with Singer, McCoy was informed by Singer that he had again spoken to defendant Gilman. *See* Motion # 110 at 6. During the telephone conversation McCoy reiterated to Singer her desire to have plaintiffs' counsel Singer and Shafer, refrain from speaking with defendant Gilman or any other defendant in this litigation. *Id.* Additionally, on March 19, 1992, McCoy wrote Singer a letter informing him that he should avoid speaking with any defendant in this litigation. *See* Motion # 110, Exhibit F.

On March 24, 1992, the defendants filed an Emergency Motion for a Protective Order (# 109) and an Emergency Motion for Sanctions (# 110).

## DISCUSSION

### I. Introduction

The motions center on *ex parte* communications by plaintiffs' counsel with defendant Gilman. The defendants argue that Singer and Shafer discussed with defendant Gilman the subject matter of this litigation without the presence of defense counsel in violation of Nevada Supreme Court Rule 182 (SCR 182). As a result of the allegedly improper communications with defendant Gilman, defendants seek relief under Rule 26(c) of the Federal Rules of Civil Procedure. In the Motion For a Protective Order (# 109) the defendant's seek an order of the court:

a. prohibiting Singer, Shafer and any other individual from disclosing without prior authorization from the Court any information received by Singer and Shafer during *ex parte* meetings and conversations with the defendant Gilman;

b. prohibiting Singer, Shafer and any other individual from altering, discarding or destroying without prior authorization from the Court any notes, tape recordings, memoranda, correspondence, or other documents or recordings discussing, relating to, or generated during *ex parte* meetings and conversations with the defendant Gilman;

c. requiring Singer, Shafer and any other individual to immediately provide a complete summary of all of their contacts with defendants;

d. requiring Singer, Shafer and any other individual or party to turn over the originals of any documents provided by, shown to, or discussed with defendant Gilman during Singer and Shafer's contacts with defendant Gilman, as well as the originals and copies of statements, notes, memoranda, tape recordings, correspondence, facsimile transmission cover sheets, and all other recordings and documents generated as a result of *ex parte* communications with defendant Gilman; and,

e. an award of the expenses of this motion pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure.

In the Motion for Sanctions (# 110) the defendants seek an order of the court:

a. dismissing this case with prejudice;

b. disqualifying Singer and Shafer as plaintiffs' counsel; and,

c. awarding expenses of this motion pursuant to Rules 26(c) and 37(a)(4) of the Federal Rules of Civil Procedure.

In the response, plaintiffs' counsel argue that their actions did not violate SCR 182, and that even if their actions were violative of the rule, no penalties are warranted.

This court must determine (1) the propriety of *ex parte* communications between a represented defendant and plaintiffs' counsel, and (2), if the *ex parte* communications are improper, the appropriate remedy.

## II. Ex Parte Communications with Richard Gilman

### a. *Nevada Supreme Court Rule 182 and Model Rule 4.2*

Nevada Supreme Court Rule 182 (SCR 182) is a verbatim adoption of Rule 4.2 of the ABA Model Rules of Professional Conduct (Rule 4.2) which governs attorney communication with a party represented by another lawyer. *See Cronin v. Eighth Judicial Dist. Court,* 105 Nev. 635, 781 P.2d 1150 (1989). SCR 182 states that:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

SCR 182 has been adopted by this court through Rule 120–9(a) of the Local Rules of Practice for the United States District Court for the District of Nevada (Rule 120–9).[7] This court has not modified SCR 182.

■ SCR 182 prohibits a lawyer from engaging in *ex parte* communications regarding the subject matter of the litigation with an opposing party represented by counsel. *Cronin,* 781 P.2d at 1153; *See Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653, 654 (E.D.Pa.1989) (Holding based on Rule 4.2). The rule is designed to preserve the integrity of the attorney-client relationship

by protecting the represented party from the superior knowledge and skill of the opposing lawyer. *Frey v. Department of Health and Human Services,* 106 F.R.D. 32 (E.D.N.Y. 1985) (ex parte communications with a party represented by counsel are not encouraged to "prevent situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact."); *See also ABA/BNA, Lawyer's Manual on Professional Conduct* at 71:301, 302 (ABA/BNA) (June 22, 1988).

■ "In order to communicate with a represented party, an opposing lawyer needs the consent of the party's lawyer, *not of the party himself.*" *Id.* (emphasis added). A "party" for the purposes of the rule is an individual named in the lawsuit whose acts, omissions or statements could bind himself or other individuals named in the lawsuit. *See e.g. University Patents Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990). The term "represented" is construed very broadly. A party is "represented" when he has counsel of record. *See Abeles v. State Bar,* 9 Cal.3d 603, 108 Cal.Rptr. 359, 510 P.2d 719 (1973). Therefore, a party's counsel of record represents the party and his interests for the purposes of SCR 182. *Id.*

■ An attorney who innocently, mistakenly or negligently conducts *ex parte* communications with a party represented by counsel will still violate SCR 182. *Cronin,* 781 P.2d at 1153–54; *In Re McCaffrey,* 275 Or. 23, 549 P.2d 666 (1976). A breach of this rule does not have to be intentional to be the subject of disciplinary action. *Id.* The Nevada Supreme Court has held that neither negligence nor ignorance of SCR 182 justify communication with an adverse party represented by counsel. *Cronin v. Eighth Judicial District Court,* 105 Nev. 635, 781 P.2d 1150, 1153–54 (1989).

7. Local Rule 120–9(a) provides in pertinent part: The standards of conduct of any attorney admitted to practice pursuant to any subsection of Rule 120 of these Rules shall be those prescribed by the Code of Professional Respon-

sibility and the Model Rules of Professional Conduct as such may be adopted from time to time by the Supreme Court of Nevada except as such may be modified by this court.

### b. *Propriety of counsel's ex parte communications*

 Defendant Gilman is a party in this litigation. He is named as a defendant in the complaint and his acts, omissions and statements can bind himself and other parties named in this lawsuit. *See* Complaint (# 1). Defendant Gilman's counsel of record are Thomas Kummer, Esq. of Vargas & Bartlett and Stanley Parzen, Esq., Mark Ryan, Esq. and Patricia McCoy, Esq. of Mayer, Brown and Platt. Though the defendant has not always been pleased with their representation, the record *clearly* indicates that these firms have represented the defendant from the initiation of this lawsuit and filed pleadings, motions and other papers on behalf of defendant Gilman. *See,* McCoy Affidavit and Gilman Affidavit. Numerous documents have been served on defendant Gilman's counsel by the attorneys for plaintiffs. Additionally, both Singer and Shafer have stated under oath that they were aware that Mr. Gilman was represented by counsel. *See* Transcript 1 at 54; Shafer Affidavit at 3 and Singer Affidavit at 4.

There is no question that during defendant Gilman's *ex parte* meeting with plaintiffs' counsel the subject matter of this litigation was discussed. Singer and Shafer assert that the information obtained from defendant Gilman during the *ex parte* meeting, on June 21, 1991, was not beneficial to their case. However, they do not deny that the subject matter of this litigation was discussed. Defendant Gilman has stated that during the meeting and without the presence of his counsel, Singer and Shafer discussed the theory of their case and asked defendant Gilman to:

(1) review and identify markings on the audit work papers for the Teldata audits;

(2) describe at length the audit procedures employed by the defendants;

(3) discuss and explain the issuance of Teldata Stock;

(4) discuss and explain the general accounting practices and procedures of the defendant;

(5) discuss the substance of his interviews and depositions concerning Teldata with the U.S. Strike Force and the Securities and Exchange Commission;

(6) discuss the propriety and legality of actions of other defendants' actions; and,

(7) discuss his knowledge and understanding of the criminal proceedings against the former president of Teldata.

*See* Gilman Affidavit at 2–4; *See also* Shafer and Singer Affidavits.

Inasmuch as Gilman was represented by counsel and the subject matter of this litigation was discussed, plaintiffs' counsel should have refrained from engaging in *ex parte* communications with defendant Gilman pursuant to SCR 182. The communications would only have been allowed if Singer and Shafer had obtained the consent of Gilman's attorney or if authorized by law.[8]

 Negligence, ignorance, or lack of intent do not excuse a violation of SCR 182. *Cronin,* 781 P.2d at 1153–54. The flagrancy and mental state accompanying an ethical violation only affect the possible sanction that should be imposed. *See Zambrano v. City of Tustin,* 885 F.2d 1473 (9th Cir.1989). The fact (1) that Shafer informed defendant that he could have counsel present, (2) that defendant Gilman stated he didn't believe he was represented by counsel, and (3) that Gilman consented to communicate with plaintiffs' counsel are of no consequence. Prior to meeting with defendant Gilman, plaintiffs' counsel had a responsibility and duty to inform defense counsel of their intention and to seek defense counsel's consent to speak with defendant Gilman. That Singer and Shafer may have mistakenly or innocently thought their actions were permissible in light of defendant Gilbert's consent is immaterial. Although Singer and Shafer debated the propriety of discussing this case with Gilman, they did not contact the Nevada State Bar

---

8. The comments to Rule 4.2 provide:
 Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.

Association or any other attorney regarding the interpretation and application of SCR 182.

Singer and Shafer violated SCR 182.

## II. Appropriate Sanction

 The court has broad discretion in fashioning an appropriate penalty or sanction to remedy the problems caused by an attorney's improper *ex parte* communications with a party represented by counsel. *Professional Service Industries, Inc. v. Kimbrell,* 758 F.Supp. 676, 680 (D.Kan.1991); *Cronin v. Eighth Judicial Dist. Court,* 781 P.2d 1150, 1153 (Nev.1989). The appropriate remedy for the breach of an ethical rule must be based on the facts of each case. *See Zambrano,* 885 F.2d at 1478–1480, *Kimbrell,* 758 F.Supp. at 680. "In determining the proper sanction or remedy, the court must consider the client's right to be represented by the counsel of his choice, as well as, the opposing party's right to prepare and try its case without prejudice." *University Patents Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa. 1990).

 Some courts have elected to exclude from use at trial the evidence and information obtained during an improper *ex parte* communication. *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653 (E.D.Pa.1989); *University Patents Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990). Other courts have required the party who engaged in the improper *ex parte* communications to produce for the opposing party the information obtained during the communications. *Kligman,* 737 F.Supp. 325. Still other courts have elected to disqualify the party's counsel who improperly engaged in *ex parte* communications with the represented party. *Cronin,* 781 P.2d at 1153. The harshest penalty that may be imposed as a result of improper *ex parte* communications is dismissal of the pending litigation. *See e.g., Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

The remedies sought by the defendants can be summarized as follows:

(1) prohibit the use of evidence obtained during the *ex parte* meeting with Gilman;

(2) disqualify plaintiffs' counsel;

(3) dismiss this litigation; and,

(4) award reasonable expenses including attorney's fees incurred in connection with these motions.

### a. Exclusion of Evidence

The defendants seek a court order prohibiting plaintiffs from using the evidence obtained during the *ex parte* communications and requiring plaintiffs' counsel to reveal the exact content of the information defendant Gilman provided them during the *ex parte* meeting.

The use of evidence obtained as a result of improper *ex parte* communications was addressed in *Cagguila v. Wyeth Laboratories, Inc.,* 127 F.R.D. 653 (E.D.Pa.1989) and *University Patents Inc. v. Kligman,* 737 F.Supp. 325 (E.D.Pa.1990). In *Cagguila* and *Kligman,* attorneys representing one party in the litigation, conducted *ex parte* communications with employees of the opposing party. In both cases, the *ex parte* communications generated statements and mental impressions from adverse parties. The Court held that because the attorneys were neither reasonable, nor prudent, and the information gathered *ex parte* was detrimental to the opposing party, the information acquired was excluded from use at trial.[9]

In addition to excluding the use of the statements, the court in *Kligman* also ordered the production of any statements obtained during the improper *ex parte* communications because "[a] court has authority to prohibit or remedy litigation practices which raise ethical concerns or may constitute ethical violations." *Kligman* 737 F.Supp. at 329.

 The conduct of Singer and Shafer was anything but prudent. They have testified that prior to meeting with Gilman they were concerned with the ethical propriety of conducting *ex parte* communications with defendant Gilman. *See* Transcript 2 at 56; Transcript 1 at 59. Therefore, they dis-

---

**9.** The court in *Cagguila* noted that if the excluded evidence was later obtained through properly conducted discovery, the information could be used at trial. *Cagguila,* 127 F.R.D. at 655 n. 3.

cussed the matter over the telephone and prior to meeting with defendant Gilman. *Id.* However, neither Shafer nor Singer conducted any legal research on the issue. *See* Transcript 1 at 70. They neither contacted the Nevada Bar Counsel for an opinion, nor did they consult with any other attorney regarding the propriety of their planned meeting with defendant Gilman. Singer and Shafer just assumed that because defendant Gilman did not believe he was being represented properly they could meet with him. *Id.* However, a reasonable and prudent attorney would have telephoned opposing counsel as a precautionary measure or a least conducted some legal research. No precautions were pursued by either Shafer or Singer.

Singer and Shafer attempted to circumvent the rules of discovery by engaging in *ex parte* communication with a represented party.

The plaintiffs should be prohibited from using any information improperly obtained and further, should disclose the information received by Singer and Shafer during the *ex parte* conversations with defendant Gilman.

### b. Disqualification

Another sanction which has been applied to remedy the problems created by an attorney's improper *ex parte* communications is the disqualification of the attorney. *See Cronin v. Eighth Judicial Dist. Court,* 781 P.2d 1150, 1153 (Nev.1989); *Shelton v. Hess,* 599 F.Supp. 905 (S.D.Tex.1984). Courts have wide discretion in determining whether disqualification is required in a particular case and any doubt is resolved in favor of disqualification. *Cronin,* 781 P.2d at 1153.

There is little uniformity in the case law addressing the disqualification of attorneys who violate Rule 4.2. Both state and federal courts have applied differing standards when determining whether disqualification is warranted as a result of improper *ex parte* communications by a lawyer. The Fifth Circuit and the Nevada Supreme Court have determined that disqualification is warranted if the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in a particular case. *Woods v. Covington*

*County Bank,* 537 F.2d 804, 813 (5th Cir. 1976); *Cronin* 781 P.2d at 115.

Other courts have applied a different balancing of interests test when determining whether disqualification is warranted for an attorney's improper *ex parte* communications. Pursuant to that test, three competing interests must be balanced: (1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosure of confidential information; and (3) the public's interest in the scrupulous administration of justice. *Meat Price Investigators Ass'n v. Spencer Foods,* 572 F.2d 163, 165 (8th Cir. 1978); *Complaint of Korea Shipping Corp.,* 621 F.Supp. 164 (D.C.Alaska 1985).

Neither the standard applied in *Woods* and *Cronin* nor the standard applied in *Spencer* and *Korea Shipping* adequately address an attorney's duty to maintain the integrity of the legal profession. Under these standards, if an attorney commits a flagrant violation of Rule 4.2, yet neither party is prejudiced and the public is not made skeptical of the legitimacy of the court proceedings, the violation could be excused. The two standards applied above do not take into consideration the fact that attorneys are officers of the court and have a duty to maintain the integrity of the legal profession.

> [E]very lawyer is responsible for observance of the Rules of Professional Conduct; a lawyer must not only conform his or her conduct to the Rule, but also must aid in securing their observance by other lawyers. This duty involves irksome and sometimes onerous responsibilities. However, neglect of the responsibilities will compromise the independence of the profession and the public interest it serves.

Article 8 Model Rules of Professional Conduct, *Maintaining the Integrity of the Profession,* Discussion Draft (1980) (then rules 10.1 through 10.5).

The extent and nature of an attorney's misconduct must be considered when determining whether disqualification is

warranted.[10] Therefore, after it has been established that an attorney has violated SCR 182, a court must balance the client's interest in being represented by counsel of his choice against the nature and extent of the violation. The nature and extent of the violation entails an examination of (a) the likelihood that the ethics violation will prejudice the proceeding, (b) the extent to which the violation undermined the integrity of the judicial process and (c) the affect the violation has on the attorney client privilege.

Plaintiffs' counsel flagrantly violated SCR 182. Both Singer and Shafer were aware that defendant Gilman had counsel of record and were aware of the possible ethical problems that their *ex parte* communications with Gilman might create. Nevertheless, the attorneys failed to conduct any legal research regarding the propriety of meeting with Gilman and neither attorney felt it would be wise inform defense counsel of their planned meeting with defendant Gilman. Plaintiffs counsel merely assumed that if defendant Gilman was really upset with his present representation, they could engage in *ex parte* communications with him.

During the five (5) hour *ex parte* meeting with defendant Gilman, plaintiffs' counsel had defendant Gilman review and comment on volumes of information. Though some of this information may have been obtained during the course of discovery, the information was improperly acquired during a meeting in which defense counsel was not present to prevent the possible disclosure of confidential or privileged information. Additionally, because the meeting was not recorded in any fashion, it is impossible to tell the exact details of the meeting and the potential advantage the information provided by defendant Gilman may have given the plaintiffs. Significant defense information has been revealed to the plaintiffs. Prejudice as a result of Singer's and Shafer's meeting with defendant Gilman weighs heavily in favor of the disqualification of the plaintiffs' current counsel.

**10.** Pursuant to Nevada Supreme Court Rule 203 and Model Rule 8.4:

It is professional misconduct for a lawyer to:

### c. Dismissal of Litigation

The most severe penalty that may be imposed as a result of improper *ex parte* communications with a party represented by counsel is dismissal of the litigation. This court has the discretion to dismiss pending litigation as a result of misconduct and improprieties by a party's attorney. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 629–631, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962). However, this court's review of the relevant case law does not reveal any cases in which a court has dismissed pending litigation based solely on a violation of Model Rule 4.2 or SCR 182.

Because dismissal of litigation is such a sever penalty, courts are reluctant to dismiss a case while the proceedings are in the pre-trial stages of litigation. The Ninth Circuit has held that dismissal of a case for violation of Fed.R.Civ.P. 37 or 41 is only warranted after a court has considered (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Porter v. Martinez,* 941 F.2d 732, 733 (9th Cir.1991); *Malone v. United States Postal Serv.,* 833 F.2d 128, 130 (9th Cir.1987); *See e.g., West Coast Theater Corp. v. City of Portland,* 897 F.2d 1519, 1523 (9th Cir.1990).

The exclusion of the evidence obtained during the *ex parte* communications, production of the statements and information obtained by Singer and Shafer during their *ex parte* communication with Gilman, and disqualification of Singer and Shafer will remedy the problems created as a result of their conduct. These remedies will also allow the plaintiffs to pursue the underlying cause of action. Dismissal of this litigation would only serve to frustrate and retard the resolution of this case on the merits.

### *ORDER*

Based on the foregoing and good cause appearing,

1. Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another. . . .

IT IS HEREBY ORDERED that the defendants' Emergency Motion For Protective Order (# 109) is granted as follows:

1. prohibiting Michael H. Singer, Bradly Jay Shafer, any other counsel for plaintiffs, plaintiffs, and any other attorneys, experts, consultants, employees or other individuals assisting them in any fashion in the prosecution of any of the above-captioned cases from disclosing to any individual without prior authorization from the Court:

 a. information regarding any discussions or meetings any of them have had with defendant Richard Gilman;

 b. the contents of any such discussions or meetings;

 c. any information they have learned or obtained during the course of any such discussions or meetings; and,

 d. any notes, tape recordings, memoranda, or other documents or recordings discussing, relating to, or generated in any such discussions or meetings.

2. prohibiting Michael H. Singer, Bradly Jay Shafer, any other counsel for plaintiffs, plaintiffs, and any other attorneys, experts, consultants, employees, or other individuals assisting them in any way in the prosecution of any of the above-captioned cases from altering, discarding, or destroying any notes, tape recordings, memoranda, correspondence, or other documents or recordings discussing, relating to, or generated in any such discussions or meetings.

IT IS FURTHER ORDERED that the defendants' Emergency Motion For Sanctions (# 110) is granted in part as follows:

1. plaintiffs and their counsel shall produce for examination and copying the originals of any documents provided by, shown to, or discussed with defendant Richard Gilman during the course of Singer and Shafer's contacts with him, as well as all originals and copies of statements, notes, memoranda, tape recordings, correspondence, facsimile transmission cover sheets, and all other recordings and documents generated as a result of Singer and Shafer's contacts with defendant Richard Gilman; and,

2. Michael H. Singer and Bradly J. Shafer are immediately disqualified as plaintiffs' counsel.

## ORDER RE: REQUEST FOR EXPENSES PURSUANT TO RULE 26(C) AND 37(A)(4) OF THE FEDERAL RULES OF CIVIL PROCEDURE

IT IS FURTHER ORDERED that defendants' counsel shall submit a detailed affidavit outlining the reasonable expenses incurred in obtaining this Order, including attorneys fees on or before July 17, 1992;

IT IS FURTHER ORDERED that Singer, Shafer and the plaintiffs shall file and serve any opposition thereto on or before July 31, 1992; and,

IT IS FURTHER ORDERED that a hearing on defendant's request for reasonable expenses including attorneys fees will be scheduled at the convenience of the court, counsel and the parties.

### ORDER
[Filed October 7, 1993]

ON PETITION FOR ATTORNEY'S FEES

JOHNSTON, United States Magistrate Judge.

This court disqualified Michael H. Singer and Bradley J. Shafer from serving as counsel for the Plaintiffs based upon improper *ex parte* communications (*see,* # 131). This court further ordered defendants' counsel to submit a detailed affidavit recounting reasonable expenses, including attorneys fees, incurred relating to the disqualification proceedings.

This matter now comes before this court on the Defendants' Petition for Attorney's Fees and Expenses (# 133), the Opposition of Michael H. Singer and Bradley J. Shafer to Defendants' Petition (# 134), the Reply Memorandum in Support of Defendants' Petition (# 136), and Plaintiff's Opposition (# 140). The Court conducted a hearing on this matter.

### DISCUSSION

#### I. INTRODUCTION

This court can award attorney fees and costs, two standard forms of sanction, in this case.

To substantiate attorney fees, Defendants submitted an itemized billing index of the time spent preparing opening and reply briefs, and the time spent preparing for and attending the hearing. This work involved four attorneys: one Las Vegas attorney, Thomas F. Kummer, of Vargas & Bartlett, and three attorneys from Washington D.C., Mark W. Ryan, Patricia A. Mc Coy, and Scott P. Pearlman from the firm of Mayer, Brown & Platt. Initially, the requested attorney fees totaled $57,499. However, in light of Singer and Shafer's opposition, this request was reduced to $55,374.

Similarly, to document costs, Defendants submitted an itemized bill indexing coach class air fare from Washington D.C. to Las Vegas for two attorneys (Mr. Ryan and Ms. McCoy), two hotel rooms for two nights, and photocopying expenses. Originally this amounted to $2475.81, but after submission of Singer and Shafer's opposition was reduced to $2437.76.

## II. COMPUTATION

Computation of attorney fees appears an easy task at first blush. The fundamental equation set forth by the Supreme Court to calculate fees defines the lodestar amount as a reasonable hourly rate times a reasonable number of hours expended on the case. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); 954 F.2d 1470, 1481–82 (9th Cir.1992). However, the simplistic beauty of the mathematics dissolves when faced with legal debate over the boundaries of reasonableness. What exactly constitutes a reasonable hourly rate and how many hours should a given legal task should consume?

### Hourly Rate

Singer and Shafer contest the hourly billing rates asserted by Defendant's Washington D.C. counsel. In particular, Plaintiffs point out that partner Ryan bills at a rate of $250 per hour, associate McCoy at $225, and associate Pearlman at $150 per hour. In contrast, Mr. Kummer, a senior partner of the Las Vegas firm of Vargas & Bartlett, charges $185 an hour.

The general rule of law states that attorney fee computations shall be based upon a reasonable rate prevailing in the community for similar work. *See e.g., Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Gates v. Deukmejian*, 977 F.2d 1300, 1313, *amended and superseded by* 987 F.2d 1392, 1404 (9th Cir.1992), *Jordan v. Multnomah County*, 815 F.2d 1258, 1262–63 (9th Cir.1987); *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Corbett v. Wild West Enterprises, Inc.*, 713 F.Supp. 1360, 1364 (D.Nev.1989). In the vast majority of cases no question arises regarding the identity of the relevant community, because counsel in most cases practice in the forum of the presiding court. Yet in this case the court must resolve whether Washington D.C. or Las Vegas should serve as the relevant community and thus whether the hourly rate should reflect Washington D.C. prices or Las Vegas prices.

This court is not the first to confront this issue. The Court of Appeals for the District of Columbia, a forum most accustomed to foreign counsel, has squarely addressed the question and promulgated an appropriate rule of law in *Donnell v. United States*, 682 F.2d 240, 251–52 (D.C.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). Moreover, the District of Nevada has already adopted the rule proposed by *Donnell*, though without actually citing, in *Corbett v. Wild West Enters., Inc.*, 713 F.Supp. 1360, 1364 (D.Nev.1989). Simply put, under *Corbett* and *Donnell*, the jurisdiction of the trial court generally serves as the relevant community. The *Donnell* court persuasively supports this rule:

> This is a simple rule to follow. It requires the district court normally to determine only the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise. Moreover, it is a neutral rule which will not work to any clear advantage for either those seeking attorneys' fees or those paying them. High-priced attorneys coming into a jurisdiction in which market rates are lower

will have to accept those lower rates for litigation performed there. Similarly, some attorneys may receive fees based on rates higher than they normally command if those higher rates are the norm for the jurisdiction in which the suit was litigated. *Id.;* See also the two cases cited by *Donnell, McPherson v. School Dist. #186,* 465 F.Supp. 749, 760 (S.D.Ill.1978) (location where suit originated and tried held as the locale governing customary hourly rate in computing attorney fees); *Donaldson v. O'Connor,* 454 F.Supp. 311, 314 (N.D.Fla. 1978) (fees customarily charged in community where lawsuit prosecuted governs award of attorney fees).

■ However, an attorney litigating in a foreign forum may recover fees based upon the usual rate in that attorney's home community "if there are compelling reasons why the services performed by that attorney were unavailable within the court's jurisdiction." *Donnell,* 682 F.2d at 252; *See also, Donaldson,* 454 F.Supp. at 314–15.

■ This case presents no such compelling reasons. In *Donnell* a foreign attorney from Mississippi earned the Mississippi hourly rate. *Donnell,* 682 F.2d at 252. However, unlike the matter handled by the Mississippi attorney in *Donnell,* the motion to disqualify counsel in this case required no specialized knowledge of the law or procedure of any specific geographic region. Moreover, Mr. Kummer's participation, as well as the fact that many firms in Las Vegas can handle such routine civil litigation matters, evidences a lack of compelling grounds to award Washington D.C. hourly rates. Granting that the D.C. counsel had familiarity with the case and the *ex parte* communications, this still did not require their involvement in this aspect of the case to a degree mandating their higher fees.

Accordingly, this court will reduce the award of attorney fees by altering the hourly rate from a Washington D.C. level to a Las Vegas standard. To maintain approximate proportions between the three Washington D.C. attorneys, this court will award billing by Mr. Ryan at a rate of $185 an hour (equal to that of Mr. Kummer), Ms. McCoy at $167 an hour (90% of Mr. Ryan's rate), and Mr.

Pearlman at $130 an hour (70% of Mr. Ryan's rate).

*Billing Technique*

Singer and Shafer also protest Defendants' use of the quarter hour billing method. This manner of billing rounds all time increments up to the next quarter hour. For example, four minutes of work rounds up to fifteen minutes of billable time, thirty-two minutes rounds up to forty-five, and so on.

Singer and Shafer argue that a more modern approach which rounds up to the next tenth of an hour, has replaced the "old" practice of quarter hour billing. While this may be true, this court recognizes that an attorney must utilize some billing procedure which approximates time spent on legal work.

■ Whether an attorney rounds off to the nearest quarter hour or tenth of an hour, any billing technique which relies upon human honesty falls subject to "creative accounting" or downright cheating. Yet, short of such billing fraud, this court finds no authority or grounds upon which to prevent billing by the quarter hour method per se.

Though many firms may now use other, perhaps more accurate billing systems, the only facts to ensure here are that the proposed billing honestly and reasonably reflects the effort exerted in the matter and follows the usual billing scheme ordinarily used by the attorneys involved. Having no basis to cast doubt upon these issues, this court does not reject the Defendants' use of the quarter hour billing method.

*Number of Hours*

Lastly, Shafer and Singer challenge the number of hours billed by Mr. Ryan, Ms. McCoy, and Mr. Pearlman. In response Mr. Ryan agreed to reduce his amount by 8.5 hours.

Acknowledging this reduction, the court finds no basis to further reduce the hours claimed.

## III. CONCLUSION

Therefore, the total sanctions imposed in this case equal $46,599.26, as follows:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Mr.Ryan | 82.5 | $185 | $15,262.50 |
| Ms. McCoy | 72 | $167 | $12,024.00 |
| Mr. Pearlman | 80 | $130 | $10,400.00 |
| Mr. Kummer | 35 | $185 | $ 6,475.00 |
| Costs | - | - | $ 2,437.76 |
| TOTAL SANCTION | = | = | $46,599.26 |

In conclusion, this court recognizes that responsibility for sanctions generally rests upon the individual(s) at fault and may extend to individuals who derive some benefit from the misconduct. *See e.g., Malone v. United States Postal Serv.,* 833 F.2d 128, 134 (9th Cir.1987) (court should consider personal malfeasance of client); *Guam v. Reyes,* 800 F.2d 940 (9th Cir.1986); *Anderson v. Airwest, Inc.,* 542 F.2d 522, 526 (9th Cir.1976) (client must not benefit from attorney misconduct). Hence a court may order sanctions from an attorney, a client, or both.

In this case the attorneys, and not the clients, violated the rules of professional conduct with no benefit imparted to the clients. Therefore, this court wishes to make clear that the sanctions imposed in this order do not apply against the Plaintiffs, but are the burden and responsibility of their former counsel, Attorneys Singer and Shafer.

### ORDER

This court imposes sanctions against Attorneys Michael H. Singer and Bradley J. Shafer in the amount of $46,599.26, due within 60 days from the filing of this order.