**UNITED STATES of America**

v.

**Arthur L. FRANKLIN III, Defendant.**

**No. CR.A. 4:01CR49.**

United States District Court,
E.D. Virginia,
Newport News Division.

Oct. 17, 2001.

Stephen Foster Forbes,Hampton, VA, Larry W. Shelton, Office of Fed. Public Defender, Norfolk, VA, for Arthur R. Fraklin, III.

Raymond E. Patricco, Jr., Office of U.S. Atty., Norfolk, VA, for U.S.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on the Government's Second Motion for Inquiry into Potential Conflict of Interest to determine whether a potential or actual conflict of interest exits which would require the disqualification of Stephen F. Forbes from further service as the attorney for the defendant Arthur L. Franklin III ("Defendant") in this criminal matter. For the following reasons, this Court **GRANTS** the Government's motion and **DISQUALIFIES** Stephen F. Forbes from further service as defense counsel in this criminal matter. This Memorandum Opinion and Order supercedes and explicates the Court's ruling from the bench.

### I. FACTS AND PROCEDURAL HISTORY

On July 9, 2001, this Court heard a previous motion by the Government to inquire into a potential conflict of interest ("First Motion"). The allegation set forth in the government memorandum was that Attorney Forbes unethically arranged a telephone interview with Luanna Wade, a government witness in this criminal matter, in a federal prison by misrepresenting himself as her lawyer. The First Motion also alleged that Attorney Forbes' contact created a potential conflict of interest because only Defendant and Attorney Forbes were present in the telephone conversation, therefore, Attorney Forbes was a potential trial witness to this conversation.

The Court found no clear ethical violation in the First Motion and declined to disqualify Attorney Forbes. The Court noted, however, its concern over the alleged conduct and warned Attorney Forbes that it would not tolerate further misconduct.

On August 28, 2001, the Government filed the Second Motion for Inquiry into Potential Conflict of Interest ("Second Motion"). The allegations of the Second Motion involved Attorney Forbes' contact with government witness Richard McGilvary ("McGilvary"). McGilvary is a former project manager for Great Atlantic Property Management ("GAPM") and a former business associate and alleged co-conspirator of the Defendant. According to the indictment, McGilvary received $34,000 in kickbacks from the Defendant in return for providing the Defendant with confidential bid information and rigging GAPM bids in his favor.

In early June, 2001, Attorney Forbes referred McGilvary to Robert G. Morecock of Shuttleworth, Ruloff & Giordano, P.C.. McGilvary retained Attorney Morecock to represent him in connection with the government's investigation in this case. Attorney Forbes spoke with Attorney Morecock on more than one occasion prior to McGilvary's appearance before the grand jury regarding his upcoming appearance on July 9, 2001. Attorney Forbes tried to contact Attorney Morecock around the July 9, 2001 grand jury hearing, but Attorney Morecock was unable to return Attorney Forbes' calls. At no point in any of their dealings after Attorney Morecock had been retained as McGilvary's lawyer did he give Attorney Forbes his consent to speak with McGilvary without Attorney Morecock being present.

On Friday, August 17, 2001, Defendant telephoned McGilvary and advised him

that Attorney Forbes was going to send him a subpoena to appear as a witness in the September 12, 2001 trial. Defendant told McGilvary that Attorney Forbes and Attorney Atlee, another lawyer for the defense, wanted to meet with him. Later that same day, McGilvary received a facsimile letter ("First Letter") at his office from the office of Attorney Forbes. The letter was addressed directly to McGilvary's home address and was neither carbon copied to his counsel, Attorney Morecock, nor was a separate letter sent to Attorney Morecock. The letter advised McGilvary that there was a possibility that he would be called as a witness for the defense at Defendant's September 12, 2001 trial. McGilvary tried to call his attorney, Attorney Morecock, but Attorney Morecock did not return his call because he was on vacation. Attorney Forbes also attempted to contact Attorney Morecock at his office; however, because Attorney Morecock was out of the office for the day, he did not return the call.

Defendant again contacted McGilvary on August 17, 2001, and asked him if he would be available to meet with Defendant, Attorney Forbes, and Attorney Atlee over the upcoming weekend. McGilvary agreed to meet with Attorney Forbes on Sunday, August 19, 2001.

On Sunday, August 19, 2001, at 11:30 a.m., McGilvary met with Attorney Forbes, Attorney Atlee, and Defendant at Attorney Atlee's office in Hampton, Virginia. After reading to McGilvary the section of the superseding indictment involving McGilvary, Attorney Atlee and Attorney Forbes began asking McGilvary a number of substantive questions to which McGilvary responded. One of those questions directly involved the a disputed material fact— whether McGilvary received anything from Defendant in exchange for information on GAPM budgets/bids. McGilvary answered in the negative—a statement that directly contradicted his testimony to the Government. Thus, Attorney Forbes in this meeting managed to create impeaching statements to the testimony of one of the key witnesses in the Government's case, all without the presence of McGilvary's attorney.

During the course of the meeting, McGilvary mentioned contact with his attorney in reference to the grand jury proceeding. At that point, Attorney Atlee asked whether McGilvary had a lawyer and McGilvary indicated that he did. Attorney Atlee immediately terminated the meeting and refused to speak further with McGilvary.

The following Monday, August 20, 2001, Attorney Forbes called Attorney Morecock and spoke to him. After asking for details of what McGilvary had told the government, and Attorney Morecock refusing to comment, Attorney Forbes mentioned that he had met with McGilvary the previous day. Two days later, Attorney Morecock faxed Attorney Forbes a letter expressing his displeasure at the meeting between Attorney Forbes and his client in his absence and his appreciation of Attorney Atlee's prompt termination of the meeting once he learned that McGilvary was represented.[1]

On August 24, 2001, Attorney Forbes faxed Attorney Morecock a response. In this letter, Attorney Forbes claimed that he did not know whether Attorney More-

---

1. In the first sentence of the letter, Attorney Morecock states that "by this letter, [he] officially rescind[s] any authority previously discussed which would allow you to talk to my client, Richard McGilvary." Attorney More-

cock explained at the hearing that he previously never had given actual authority, rather he was referring to the authority that Attorney Forbes may have believed that he had.

cock "represented this man or not" and relied on the fact that McGilvary "voluntarily appeared" at the August 19th meeting, but admitted that he did not obtain Attorney Morecock's permission before meeting with McGilvary. The response also stated that "However, should [McGilvary] contact me again and represent that you do not represent him or that he desires to discuss the matter with me, despite your representation, I will not be contacting you."

Attached to the faxed response was a second August 17, 2001 letter addressed to McGilvary indicating Attorney Forbes' belief that he was no longer represented by counsel. It further stated that if McGilvary was still represented, he should have his attorney contact Attorney Forbes. Otherwise, McGilvary should contact Attorney Forbes to discuss the matter. Attorney Forbes claimed to have faxed this letter either in addition to or in place of the first August 17th letter. McGilvary testified that he never received the second letter from Attorney Forbes.

After this correspondence between the two attorneys, Attorney Morecock reported Attorney Forbes' actions to the United States Attorney, who brought this Second Motion for Inquiry into Potential Conflict of Interest against Attorney Forbes and sought Attorney Forbes' disqualification.

Attorney Forbes testified that he believed that Attorney Morecock no longer represented McGilvary in this matter. He maintains this position even though McGilvary is named in the indictment as Defendant's co-conspirator, Defendant's trial was not scheduled to begin until September 12, 2001, and Attorney Forbes had not confirmed that McGilvary was no longer represented by Attorney Morecock before the meeting, despite the fact he attempted to call Attorney Morecock. Attorney Forbes based this belief upon, rather, statements by the Defendant, who told him that McGilvary was not represented. Before the hearing on the instant motion, Attorney Forbes advised the Court that Attorney Larry Shelton[2] would serve as co-counsel for Defendant at the hearing into the instant motion.

## II. LEGAL STANDARDS

### A. The Defendant's Right to Counsel of Choice

■ The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." U.S. Const. amend. VI. This right does not guarantee, however, that a defendant can insist on being represented by a specific attorney no matter the circumstances. Instead, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

■ Courts "must recognize a presumption in favor" of a defendant's choice of counsel, *Wheat*, 486 U.S. at 164, 108 S.Ct. 1692, and should not interfere with that relationship unless the specific circumstances of the representation in a case demand the court's attention to the potential impropriety of that representation. *See United States v. Collins*, 920 F.2d 619, 625 (10th Cir.1990) ("When a court unreasonably or arbitrarily interferes with an

---

**2.** Larry Shelton, an attorney in the private practice of law, is a former Assistant United States Attorney who has extensive civil and criminal litigation experience in the Eastern District of Virginia.

accused [sic] right to retain counsel of his choice, a conviction attained under such circumstances cannot stand, irrespective of whether the defendant has been prejudiced") (citations omitted). For example, a defendant's choice of counsel and the Sixth Amendment presumption in favor of that choice can be "overcome by not only a demonstration of actual conflict, but by a showing of a potential serious conflict ." *Wheat*, 486 U.S. at 164, 108 S.Ct. 1692. In addition, the right to counsel is "secondary in importance to the Court's duty to maintain the highest standards of professional conduct to insure and preserve trust in the integrity of the bar." *In re Asbestos Cases*, 514 F.Supp. 914, 925 (E.D.Va.1981); *see also United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir.1997); *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996); *United States v. Scott*, 980 F.Supp. 165, 167 (E.D.Va.1997); *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va.1990). "Federal Courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692; *see also Williams*, 81 F.3d at 1324; *Scott*, 980 F.Supp. at 167. The Court is, therefore, faced with the task of balancing the individual rights and interests of the defendant to his counsel of choice with maintaining the integrity of the proceedings.

B. Attorney Disqualification

■ The decision to disqualify a defendant's chosen counsel is a serious matter and must be decided on a case-by-case basis. *Tessier*, 731 F.Supp. at 729 (citing *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir.1982) (holding that an "actual or likely" conflict of interest is required)); *In re Asbestos Cases*, 514 F.Supp. at 923–24. "The mov-

ing party bears a high standard of proof to show that disqualification is warranted." *Tessier*, 731 F.Supp. at 729. "In determining whether to disqualify counsel ... the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977) (quoting *Gas–A–Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1324–25 (9th Cir.1976)).

■ This Court is charged by *Wheat* to exercise its sound discretion and determine independently whether the continued representation by counsel impedes the integrity of the proceedings and whether the attorney should thus be disqualified. *Wheat*, 486 U.S. at 161–64, 108 S.Ct. 1692; *and see Williams*, 81 F.3d at 1324 ("*Wheat* thus requires a district court to exercise is own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party. And, it made plain that for this purpose the court must have sufficiently broad discretion to rule without fear that it is setting itself up for reversal on appeal either on right-to-counsel grounds if it disqualifies the defendant's chosen lawyer, or on ineffective assistance grounds if it permits conflict-infected representation of the defendant.").

■ Several courts applied a two-prong test to determine whether disqualification is warranted when the actions by counsel implicate the integrity of the proceedings. *See Collins*, 920 F.2d at 628–29; *United States v. Urbana*, 770 F.Supp. 1552, 1557 (S.D.Fla.1991); *United States v. Walton*, 703 F.Supp. 75, 77 (S.D.Fla.1988). "First, although there need not be proof of

actual wrongdoing, 'there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur.'" *Hobson*, 672 F.2d at 828 (citing *Woods v. Covington Co. Bank*, 537 F.2d 804, 813 (5th Cir.1976). "Second, 'a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in the case.'" *Id.* Because this is a criminal case, the second prong's "social interests" includes the defendant's Sixth Amendment right to counsel of choice. *Id.* at 830; *and see id.* at 828 ("We find the Woods approach more appropriate in the criminal context because it provides a higher degree of protection for [the Sixth Amendment right to counsel]").[3]

■■■ The Eighth Circuit, on the other hand, outlined three competing interests that must be balanced when deciding whether to disqualify an attorney. *See Meat Price Investigators Assoc'n v. Spencer Foods, Inc.*, 572 F.2d 163 (8th Cir.1978). These factors are: "(1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice ...; and (3) the public's interest in the scrupulous administration of justice." *Id.* at 165. When examining both approaches, however, the District of Nevada in *Faison v. Thornton*, 863 F.Supp. 1204, 1216 (D.Nev.1993), pointed out that "[t]he two standards ... do not take into consideration the fact that attorneys are officers of the court and have a duty to maintain the integrity of the profession," and took into account the "extent and nature of an attorney's misconduct." *Id.*

The Fourth Circuit has not established which of these factors inform the decision of attorney disqualification. This Court, in an exercise of caution, will examine both approaches.

### C. The Virginia Rules of Professional Conduct

The Virginia Rules of Professional Conduct guide this Court's analysis of whether the impropriety of counsel's actions warrant disqualification. Certain rules of the Virginia Rules of Professional Conduct are imperative and "failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process." Preamble, Virginia Rules of Professional Conduct. We have been cautioned, however, to "avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to chose their counsel; and [to] always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir.1992); *see also Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir.1978) (quoting a brief by the Connecticut Bar Association in *International Elecs. Corp. v. Flanzer*, 527 F.2d 1288 (2d Cir.1975): "It behooves this court, therefore, while mindful of the existing Code, to examine afresh the problems sought to be met by the Code, to weigh for itself what those problems are, how real in

---

**3.** The *Woods* case bases its analysis on Canon 9, which no longer appears as part of the Model Rules of Professional Conduct. *See Nuri v. PRC, Inc.*, 5 F.Supp.2d 1299, 1301 (M.D.Ala.1998) (recognizing that the American Bar Association's Model Code was replaced with the Model Rules of Professional Conduct in August 1983. The new Model Rules did not contain the language of Canon 9, which provided that "A lawyer should avoid ever the appearance of impropriety."). We note, however, that courts continue to use the *Woods* test, as it continues to offer the most lucid and contemplative analysis as to whether disqualification is appropriate. *See Collins*, 920 F.2d at 628–29; *Hobson*, 672 F.2d at 828; *Urbana*, 770 F.Supp. at 1557; *Walton*, 703 F.Supp. at 77.

the practical world they are in fact, and whether a mechanical and didactic application of the Code to all situations automatically might not be productive of more harm than good, by requiring the client and the judicial system to sacrifice more than the value of the presumed benefits.").

The Court will, therefore, examine the facts of this case in light of what the disciplinary rules require but its analysis will not end there. Upon finding whether there was a violation of the applicable disciplinary rules, this Court will balance the Defendant's Sixth Amendment right to counsel with the interest of preserving the integrity of the judicial system while taking into account whether practical considerations of and alternatives to disqualification weigh against disqualification. There are two Disciplinary Rules raised by the facts of this case.

### 1. Rule 4.2 Communication with Persons Represented by Counsel

Rule 4.2 of the Virginia Rules of Professional Conduct requires that: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Va. Rules of Prof. Conduct, Rule 4.2 (2000). Comment 5a enlightens the reasoning behind the prohibition, noting that "concerns regarding the need to protect uncounselled persons against the wiles of opposing counsel and preserving the attorney-client relationship may also be involved *where a person is a target of a criminal investi-*

*gation,* knows this, and has retained counsel to receive advice with respect to the investigation. The same concerns may be involved where a *'third party' witness* furnishes testimony in an investigation or proceeding, and although not a formal party, has decided to retain counsel to receive advice with respect thereto." *Id.* at Rule 4.2, cmt. 5a.

 "In order to communicate with a represented party, an opposing lawyer needs the consent of the party's lawyer, *not of the party himself." Faison v. Thornton,* 863 F.Supp. 1204, 1213 (D.Nev. 1993) (emphasis in original). The mental state, or lack thereof, associated with the *ex parte* communication, does not establish whether Rule 4.2 was violated, rather, the mental state merely informs the extent of remedial action required. *See id.* at 1214 (finding that "[t]he fact (1) that [plaintiffs' counsel] informed defendant that he could have counsel present, (2) that defendant ... stated he didn't believe he was represented by counsel, and (3) that [defendant] consented to communicate with plaintiffs' counsel are of no consequence" and thereby disqualifying counsel).

### 2. Rule 3.7 Lawyer as Witness

 Rule 3.7 of the Virginia Rules of Professional Conduct provides that:

(a) A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness [4] except where:

(1) the testimony relates to an uncontested issue;

---

4. The Committee, in its Commentary, "concluded that the test in the ABA Model Rule, i.e., whether a lawyer 'is likely to be a necessary witness,' is more instructive than that in DR 5–101(B), i.e., whether the lawyer 'knows or it is obvious that he ... ought to be called as a witness." ' Va. R. Sup.Ct. pt. 6 § 2 RPC Rule 3.7, Committee Commentary. The Court understands this notation to clarify that the extent of the probability that the lawyer will be a witness need not reach an absolute.

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Va. Rules of Prof. Conduct, Rule 3.7 (2000). The Fourth Circuit holds that "[t]he roles of witness and advocate are fundamentally inconsistent and when . . . a lawyer ought to testify as a witness for his client, he must as a rule withdraw from advocacy." *International Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1980) (citing Ethical Consideration (EC) 5–9). "Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." *Id.* (quoting EC 5–10). An actual conflict of interest exists when the attorney had independent information about facts in controversy relating to his client and would, therefore, be faced with the possibility of testifying. *See Urbana*, 770 F.Supp. at 1559 (finding an actual conflict where defense counsel could "offer testimony severely undermining the credibility of the government's star witness" and "[i]nasmuch [the attorney] can offer testimony about material issues in the case, he is precluded from appearing as trial counsel").

### III. ANALYSIS

The Court must begin its analysis in light of the Sixth Amendment and the fact that Defendant Franklin chose Stephen Forbes as counsel for his defense. From this presumption the Court will examine whether the integrity of the proceedings has been compromised and if so, whether the acts of Attorney Forbes were so egregious so as to warrant his disqualification.

The Court finds that the integrity of the proceedings have been implicated on these facts. This is not the first time that Attorney Forbes has appeared before the Court for questionable conduct in his representation of the Defendant, and for the very same conduct which is at issue here. Attorney Forbes violated Rule 4.2 when he had *ex parte* communications with a co-conspirator and witness for the government, McGilvary, whom Attorney Forbes knew to be represented by an attorney. Attorney Forbes referred McGilvary to his future attorney, Attorney Morecock. Attorney Forbes attempted to contact Attorney Morecock before meeting with McGilvary. To determine whether McGilvary was represented by counsel, Attorney Forbes claimed that he relied on a conversation between Defendant and McGilvary that occurred when Defendant set up the meeting with McGilvary. This is troublesome because Attorney Forbes should have known better, from his experience as an attorney, than to rely on a layman's opinion, let alone his client's, as to whether McGilvary was represented.

It is of no consequence that McGilvary agreed to meet with Attorney Forbes. This consent was not informed because McGilvary, despite his attempts, was unable to confer with his attorney to determine if it was appropriate to meet with Attorney Forbes and Defendant. The District of Nevada, in *Faison v. Thornton, supra,* addressed similar facts and found that such consent in no way mitigates whether a violation of Rule 4.2 has occurred.[5] Based upon the testimony of

---

**5.** The United States District Court for the District of Nevada affirmed a Magistrate Judge's order disqualifying the plaintiff's counsel for conducting an *ex parte* meeting with a codefendant without his attorney present. The defendant contacted plaintiff's counsel and told them that he did not know whether he was in fact represented, and even

McGilvary and Attorney Forbes, the other documentary evidence, and the fact that Attorney Forbes participated in and was admonished previously for the very same conduct, convinces this Court that Attorney Forbes knowingly violated Rule 4.2.

This brief *ex parte* meeting was not without consequences that will taint the trial. When questioning McGilvary, Attorney Forbes elicited a statement from McGilvary that directly contradicts testimony that the prosecution anticipated it would elicit from McGilvary during its case in chief. This meeting generated inconsistencies in the evidence that likely would not have been otherwise, had McGilvary been counseled by his attorney and had been protected from the "wiles of opposing counsel." Attorney Forbes directly tampered with the witness and the evidence, which is the exact result sought to be avoided by Rule 4.2. The integrity of the proceedings were directly impacted and compromised through Attorney Forbes' violation of Rule 4.2.

The integrity of the proceedings are further implicated by a potential consequence of the *ex parte* communications with McGilvary. As noted above, Rule 3.7 prohibits a lawyer, acting in a representative capacity, to appear as a witness in the trial, and if the attorney "is likely to be a necessary witness," then the attorney should excuse himself from representation or be disqualified. In the facts of this case, the Court finds it very likely that Attorney Forbes could be called as a witness to testify to these contradictory statements. If Defendant chooses to invoke his Fifth Amendment privilege not to testify at trial, Attorney Forbes and Attorney Atlee, attorneys for the Defendant, were the only other persons present at the *ex parte* meeting with McGilvary and are the only persons who can testify.[6] Attorney Forbes and the defense assert that Defendant will most certainly testify in his defense, so it is not an issue. A defendant's Fifth Amendment right to refrain from testifying is always an issue. This Court cannot accept the assurances at this stage to decide such matters. If, in the course of trial, the defense changes its strategy and Defendant decides not to testify, then the Court will be faced with a Rule 3.7 matter in the middle of a criminal trial. At that point, the disqualification of Defen-

---

if he was, he was dissatisfied with that representation. After deliberating the ethical concerns, plaintiff's counsel met with the defendant and discussed the litigation. All was done without contacting the defendant's attorney. When plaintiff's counsel disclosed the *ex parte* conversation to the defendant's attorney later in the litigation, the defendant's attorney warned plaintiff's counsel that such contact was not permitted. When considering the motion to disqualify, the court reviewed the purposes of the Nevada rule prohibiting *ex parte* contact and found that the plaintiff's counsel's was improper. The court also noted that the consent of the defendant's attorney was required and that the defendant's consent to the meeting without his attorney was of "no consequence." *Faison*, 863 F.Supp. at 1213–14.

**6.** In the course of the hearing, Defense Counsel asserted that Attorney Atlee could always

testify as to McGilvary's statements. Unfortunately, when the similar issue came before the Court with regard to the prior First Motion for Inquiry into Potential Conflict of Interest, it was asserted that Attorney Atlee would continue the representation as co-counsel, if in fact Attorney Forbes needed to testify to the statements of Ms. Wade. Thus, if Defendant chose not to testify, he would be without Attorney Forbes as an attorney, who would testify to Ms. Wade's statements and then without Attorney Atlee, who would testify to McGilvary's statements. If the Defendant then switched his decision and had Attorney Forbes testify to the statements of both Ms. Wade and McGilvary, it only enhances the potential for a conflict of interest and further supports the Court's decision to disqualify Attorney Forbes.

dant's attorney will be far more prejudicial. In addition, the decision whether Defendant testifies cannot in any way remain subject to the interest of Attorney Forbes in retaining his representation of the Defendant. Here, the self interest of an attorney to retain a client cannot be pitted against the Constitutional right of Defendant not to testify.

The Court finds that Rule 4.2 is most certainly violated and that Rule 3.7 is unequivocally implicated. Upon finding a violation of the Virginia Rules of Professional Conduct, we must balance the Defendant's Sixth Amendment right to counsel of his choosing with the Court's independent interest in maintaining the integrity of the proceedings.

In applying the first prong of the test, as set forth above, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." Having evaluated the conduct of Attorney Forbes, the Court finds that Attorney Forbes knowingly violated Rule 4.2. It is grossly improper to communicate with a party whom the attorney knows to be represented by counsel. The language of the rule is prohibitive and the reasoning is clear. In addition, this improper behavior by Attorney Forbes implicates a conflict of interest that could further affect these proceedings.

Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interest which will be served by a lawyer's continued participation in the case." It is very clear to the Court that the social interest is presumed in the Defendant's Sixth Amendment right to counsel of his choosing. There is no sanctity, however, in a case where 'shark-lawyering' is practiced. Attorney Forbes has demonstrated to the Court that he will ignore the Court's prior warnings and admonishments and continue to violate the ethical rules of the profession without restraint. He was warned before by this Court, and the Court honored the Defendant's right to chosen counsel in the First Motion for Inquiry into Potential for Conflict of Interest. The Sixth Amendment right to counsel is not absolute, as held by the United States Supreme Court in *Wheat,* and this right must give way to the Court's independent interest in maintaining the integrity of the proceedings before it. That Attorney Forbes ignored the prior warnings leaves the Court with no assurance that the proceedings will continue any differently. In the interest of justice and an effort to maintain the public faith in the integrity of the judicial proceedings, the balance is in favor of the disqualification of Attorney Forbes.

Turning to the Eighth Circuit's "three competing interests" in *Spencer Foods,* the Court reaches the same result. First, the Court has recognized "the client's interest in being represented by counsel of his choice." The Court began its analysis with that presumption and reiterates it here. Second, the Court must consider "the opposing party's interest in a trial free from prejudice." In this case, the integrity of the proceedings is surely at risk for prejudice. The Government, and the public it represents, has the same right to a prejudice-free trial as any other litigant when attempting to bring criminals to justice. Attorney Forbes elicited contradictory statements from government witnesses and the government now will be faced with responding to that evidence at trial. Last, "the public's interest in the scrupulous administration of justice" is almost identical to the second prong of the *Woods* test. The Court, in protecting this interest, and weighing it with the aforementioned two, finds that the weight of the interests is in favor of the disqualification of Attorney Forbes as counsel for the Defendant.

The Court is also mindful of *Faison* and its charge to "take into consideration the fact that attorneys are officers of the court and have a duty to maintain the integrity of the profession." Attorney Forbes, on more than one occasion, violated Disciplinary Rule 4.2. The second instance was after warning by the Court that it would not tolerate "shenanigans." Attorney Forbes knowingly abandoned his ethical responsibilities in favor of tactics directly prohibited by the Virginia Rules of Professional Conduct.

It is clear to the Court that disqualification is not the only available remedy, but it is the most effective and warranted remedy. The Court could choose to exclude from evidence the statements procured through the *ex parte* communication. In the interest of the Defendant not being prejudiced in his defense of the criminal charges before him, the Court will permit the introduction of the statements. Disqualification at this juncture better preserves the integrity while allowing Defendant the full extent of his defense.[7] The Court recognizes what is involved in this case and that the current trial date is not feasible. Thus, the Court will continue the proceedings until a later date to avoid prejudice to the Defendant. As a practical matter, the additional time will allow new counsel to familiarize himself with the case and act as a worthy and informed advocate for Defendant.

## IV. CONCLUSION

For the foregoing reasons, the United States Government's Second Motion for Inquiry into Potential Conflict of Interest is **GRANTED** and defense counsel Stephen Forbes is **DISQUALIFIED** from further service as defense counsel in this criminal matter. Co-counsel Larry Shelton shall continue to represent the Defendant.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to Attorney Stephen Forbes and counsel for the parties.

IT IS SO **ORDERED.**

---

7. Though the disqualification remedy is drastic, Defendant has not been prejudiced. He is still represented by a more experienced veteran litigator, who assured the Court that, given the continuation of the case, will be fully prepared to represent the Defendant.